UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STRIKE, LLC, *et al.,* | ) | Case No. 21-90054 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**EAGLE CAPITAL CORPORATION'S OBJECTION TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDERS: (I) (A) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS' ENTRY INTO A STALKING HORSE AGREEMENT AND APPROVING THE REIMBURSABLE EXPENSES (C) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) APPROVING THE FORM AND MANNER OF RELATED NOTICES, AND (E) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE; (II) (A) AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF [DOC. 60]**

COMES NOW Eagle Capital Corporation ("Eagle"), by and through undersigned counsel, and objects to Debtors'[1] Emergency Motion For Entry of Orders; (I) (A) Establishing Bidding Procedures for The Sale Of Substantially All Of The Debtors' Assets, (B) Authorizing The Debtors' Entry Into A Stalking Horse Agreement And Approving The Reimbursable Expenses, (C) Establishing Procedures For The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, (D) Approving The Form And Manner Of Related Notices, and (E) Scheduling A Hearing To Consider The Proposed Sale; (II) (A) Authorizing And Approving The Sale Of Substantially All Of The Debtors' Assets Free And Clear Of All Liens, Claims,

---

[1] The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Strike LLC (2120); Strike HoldCo, LLC (0607); Delta Directional Drilling, LLC (9896); Strike Global Holdings, LLC (4661); Capstone Infrastructure Services, LLC (0161); and Crossfire, LLC (7582) and may be collectively referred to herein as "Debtors."

1

Encumbrances, and Interests, (B) Authorizing The Assumption And Assignment Of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief ("Bid Procedures Motion") [DOC. 60]. In support of this Objection, Eagle states as follows:

1. Eagle is a creditor in this case and, therefore, a party-in-interest in Debtors' bankruptcy cases.

2. On or about October 22, 2018, Eagle and Precision HDD Drilling, LLC ("Precision") entered into a Factoring and Security Agreement pursuant to which Eagle received an absolute assignment of the accounts receivable of Precision.

3. Thereafter and in the ordinary course of business, Precision submitted numerous invoices to Eagle for services rendered by Precision to Strike LLC ("Debtor").

4. Upon submission, Eagle properly notified Debtor of the assignment and rights of Eagle in the accounts of Precision and instructed Debtor to tender all payments on the account of Precision to Eagle.

5. Debtor received and accepted the notification and for a time complied with its obligation by tendering numerous payments of the Precision account to Eagle without issue.

6. Thereafter, Debtor breached contracts under a master service agreement with Precision and failed to tender payments to Eagle as required.

7. Eagle commenced litigation against Debtor and thereafter entered into a Settlement Agreement and Release with Debtor ("Settlement Agreement") on or about September 9, 2021, wherein Debtor agreed to pay Eagle approximately $4,200,00.00 within approximately 60 days of September 9, 2021.

8. On December 6, 2021 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code along with five other debtors in this jointly administered bankruptcy on the eve the payments were due under the Settlement Agreement.

9. On the Petition Date, Debtors also filed several first-day motions including the Bid Procedures Motion seeking, among other things, this Court's authorization to enter into a Stalking Horse Agreement, implement a competitive sales process under the Bidding Procedures, and execute and consummate a Sale Transaction of substantially all the Debtors' assets all on an expedited basis. (*Bid Procedures Motion, p. 2-3*).

10. The Debtors seek approval of the Stalking Horse Agreement with Strike Acquisition LLC as the Stalking Horse Bidder. (*Bid Procedures Motion p. 2, ¶ b*.)

11. Strike Acquisition LLC is a Delaware Corporation formed on December 3, 2021, three days before the Petition Date. (*See Secretary of State record, attached hereto and incorporated herein as Exhibit A*.)

12. Debtors' Bid Procedures Motion requests that this Court grant relief no later than December 22, 2021. (*Bid Procedures Motion, p. 1*.) This is only sixteen (16) days after the Petition Date and the filing of the Bid Procedures Motion.

13. As of the date of the filing of this Objection, Debtors have failed to file schedules of assets and liabilities; a schedule of current income and expenditures; a schedule of executory contracts and unexpired leases; and a statement of financial affairs; as required by Bankruptcy Rule 1007.

14. As of the date of the filing of this Objection, the 341 Meeting of Creditors has not been scheduled yet.

15. As of the date of the filing of this Objection, the United States Trustee has not yet had an opportunity to appoint an Official Committee of Unsecured Creditors, pursuant to 11 U.S.C. § 1102.

16. Debtors' Bid Procedures Motion concedes that no official committee, no trustee and no examiner has been appointed or designated by the U.S. Trustee in these Chapter 11 cases. (*Bid Procedures Motion, p. 6, ¶ 6.*)

17. Debtors have filed no disclosures regarding the identity of the proposed Stalking Horse Bidder, Strike Acquisition LLC, other than the brief reference in the Bidding Procedures document buried on page 22 of the Bid Procedures Motion, which states that it is a newly-formed entity organized and controlled by AIPCF VII Strike Holdings, LP ("AIP") and certain funds and entities managed by or affiliated with AIP that are beneficial owners (or nominees, investment managers, advisors or subadvisors for the beneficial owners) of certain secured obligations of the Debtors.

18. Debtors have failed to adequately explain and justify why the relief is sought on an expedited basis to the detriment of Eagle, other creditors and the estates.

## **Argument**

Because the purpose of an asset sale is to maximize the recovery of value for the benefit of the bankruptcy estate, the proposed bidding procedures must establish a framework for competitive bidding to ensure the maximization of such value:

> Auctions should not be empty exercises. The public policy of inspiring confidence in court-ordered sales favors confirmation of the sale to the highest bidder at the auction if it is fairly conducted. The court must also consider, however, the purpose of the judicial sale, which is to benefit both creditors and debtors.

*First Nat'l Bank v. M/V Lightning Power*, 776 F.2d 1258, 1261 (5th Cir. 1985).  See also *In re Jon J. Peterson*, *Inc.*, 411 B.R. 131, 137 (Bankr. W.D.N.Y. 2009) ("[U]nless the bidding process remains fair and equitable, competitors will refrain from the type of full participation that is needed to assure bids for the highest reasonable value. For these reasons, the court will not approve bidding procedures that undermine principles of fair play.")

This Court should deny the Debtors' Bid Procedures Motion because the proposed emergency relief would be detrimental to the creditors and render impossible a fully competitive bidding process.  The current "emergency" proposal provides a sale price consisting of a credit bid, assumption of the DIP lender's claims and costs to wind down the estate, leaving no funds for distribution to unsecured creditors.  If the Court were to grant the Debtors' relief as quickly as December 22, 2021 as they request, Eagle and the other unsecured creditors would have insufficient time to investigate Debtors, their assets and liabilities, and the identity and potential interests of the proposed Stalking Horse bidder, Strike Acquisition LLC.  The investigation into the identity and interests of Strike Acquisition LLC is more crucial given that the Debtors have provided no disclosures about this entity and have not demonstrated that it is a disinterested party.

**I.      An Emergency Sale Would Deprive Potential Bidders Of The Opportunity To Enter Bids And Thus Result In A Lower Value To The Estate.**

The proposed bidding procedures unfairly favor the proposed Stalking Horse purchaser over other potential purchasers interested in the assets.  Debtors have provided insufficient disclosure of the extent to which the assets to be sold were marketed and the extent to which the market is even aware of the availability of the assts for sale.  The Debtors have offered no explanation as to why this expedited relief is necessary before their schedules are filed and creditors and parties in interest are fully informed of matters necessary to understand the nature of the assets and the value thereof.  The Debtors similarly have offered no explanation as to why the

5

sale must proceed so quickly, requiring Objections before the date of the § 341 meeting when creditors could inquire as to the many questions arising from the hastily filed Bid Procedures Motion.

Debtors have provided inadequate detail as to how the sale timeline "balance[s] the need to quickly and efficiently sell the Assets against the need to provide an adequate period for potential purchasers to conduct due diligence and submit bids." (*Bid Procedures Motion, , p. 18, ¶ 21.*) It appears that this Court and the stakeholders are to take this assertion largely on faith. This issue, however, should be examined carefully. This is especially so since Debtors seek to transfer substantially all their assets through this sale to the Buyers.  Rushing the sale and depriving other potential bidders of the opportunity to participate will not result in selling the assets "to the highest bidder" at a "fairly conducted" auction.  *First Nat'l Bank v. M/V Lightning Power*, 776 F.2d at 1261.

      **II.**    **Granting The Bid Procedures Motion Would Leave Eagle And The Other Unsecured Creditors Unable To Protect Their Interests.**

Eagle is just one of an unknown number of creditors to whom Debtors owe money.  With six separate Debtors involved in this jointly administered case, the Debtors are likely to have many creditors.  The exact number is not known, however, because Debtors have not filed their schedules of assets and liabilities yet.  The Debtors filed for bankruptcy on the eve of the fulfillment of their settlement obligations to Eagle.  The bankruptcy appears to be filed for the purpose of wiping out the obligations owed to all the creditors, including Eagle, and other creditors Debtors may have settled with on the eve of bankruptcy

Granting the Debtors' Bid Procedures Motion would further harm the creditors by preventing the formation of an unsecured creditors committee.  When the Debtors filed their Chapter 11 petitions, the U.S. Department of Justice sent a letter to the unsecured creditors,

including Eagle, soliciting their participation in an Official Committee of Unsecured Creditors, ("Committee") which would help protect the interests of the unsecured creditors. (*See Exhibit B*.) Among other things, a Committee would have the right under the bankruptcy code to demand that Debtors consult with the Committee before making major decisions or changes, request the appointment of a trustee or examiner, participate in the formation of a plan of reorganization, possibly propose a plan of reorganization put forth by the committee, request conversion of the Debtors' Chapter 11 case to Chapter 7, and employ an attorney to work on behalf of the interests of the unsecured creditors. (Exhibit B, p. 1.)

Without these abilities, Eagle and the other unsecured creditors will be unable to protect their interests. An Unsecured Creditors' Committee is particularly essential in this case where Debtors have offered inadequate disclosures regarding the identity of the proposed Stalking Horse bidder, as discussed below.

### III. Debtors Have Provided Inadequate Disclosures, Particularly About The Proposed Stalking Horse Bidder.

This Court should deny the Bid Procedures Motion for the further reason that Debtors have filed inadequate disclosures, not only about their assets and liabilities, but also about the identity and interests of the potential Stalking Horse Bidder, Strike Acquisition LLC.

The Asset Purchase Agreement says the Agreement is between Debtors and "Strike Acquisition LLC, a Delaware limited liability company (together with its Affiliates to which it assigns, delegates, or transfers any of its rights, obligations and/or interests hereunder…)" (*Bid Procedures Motion , p. 5.*) The Bid Procedures Motion says "On December 6, 2021, following extensive arms'-length negotiations, the Debtors and the Stalking Horse Bidder executed the Stalking Horse Agreement." (*Bid Procedures Motion p. 9, ¶ 16.*) Debtors have provided no disclosures regarding Strike Acquisition LLC or its Affiliates. However, a search of the Delaware

7

Secretary of State's website shows that Strike Acquisition, LLC is a newly-formed entity incorporated three days before the Debtors filed their Chapter 11 petitions, which calls into doubt Debtors' assertion that they engaged in "extensive arms-length negotiations" with Strike Acquisition LLC. (See Exhibit A.)

The incorporation of the proposed Stalking Horse bidder just days before the bankruptcy, coupled with the urgent pace at which the Debtors propose to push this sale, gives the appearance that Debtors have hand-picked the buyer and are rushing the sale so as to prevent other potential buyers from bidding. Debtors have not demonstrated Strike Acquisition LLC is a good faith purchaser and a disinterested party, leaving open the possibility that it is owned by insiders such as owners of the Debtors. Further, it is unclear to Eagle and other interested parties to what extent the DIP Lender is in any way involved in the sale.

Furthermore, the Bid Procedures Motion and the Asset Purchase Agreement and Stalking Horse Agreement contemplate various irrevocable and broad waivers and releases as to the proposed purchaser, including various commercial tort claims, all to the detriment of creditors and before a creditors' committee has an opportunity to investigate. This is particularly troublesome to Eagle, as the Settlement Agreement was entered into when Debtor admittedly was experiencing financial difficulty in late summer 2021 and arguably was contemplating filing for bankruptcy protection. Thus, from all appearances, it appears Debtor did not enter into the agreement in good faith and with intent to breach the agreement and payment terms.

In conclusion, this Court should deny Debtors' Bid Procedures Motion because granting Debtors their requested relief on an expedited basis deprives other potential bidders from participating in the bidding process, leaves Eagle and the other unsecured creditors unable to protect their interests, prevents interested parties, including an official unsecured creditors

committee, from investigating potential causes of action that might otherwise be released, and would leave all involved parties, including this Court, with inadequate information about the Debtors' assets and liabilities and the identity and interests of the proposed Stalking Horse Bidder, Strike Acquisition LLC.

WHEREFORE, Eagle Objects to the Debtors' Bid Procedures Motion [DOC. 60] as filed and requests this Court deny the relief sought therein and require procedures allowing adequate time for all interested parties to investigate and determine any issues or objections to same; and for such other and further relief as this Court deems just and equitable.

SANDBERG PHOENIX & von GONTARD P.C.

*/s/ Sharon L. Stolte*
Sharon L. Stolte, MO #41133
4600 Madison Avenue, Suite 1000
Kansas City, MO 64112
Tel:  816.627.5543
Fax:  816.627.5532
sstolte@sandbergphoenix.com
*COUNSEL FOR EAGLE CAPITAL
CORPORATION - PRO HAC VICE*
**and**

/s/ Deirdre Carey Brown
Deirdre Carey Brown, pllc
State Bar No. 24049116
FORSHEY & PROSTOK LLP
1990 Post Oak Blvd, Suite 2400
Houston, Texas 77056
Telephone: 832-367-5722
Facsimile: 817-877-4151
dbrown@forsheyprostok.com
COUNSEL FOR EAGLE CAPITAL
CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that the 15th day of December 2021, a true and correct copy of the

Objection was electronically filed with the Clerk of the Court by using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

*/s/ Sharon L. Stolte*
Sharon L. Stolte
