United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 23, 2021

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STRIKE, LLC, *et al.*[1] | ) | Case No. 21- 90054 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (A) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS' ENTRY INTO STALKING HORSE AGREEMENT AND APPROVING THE REIMBURSABLE EXPENSES, (C) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) APPROVING THE FORM AND MANNER OF RELATED NOTICES, (E) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE; AND (F) GRANTING RELATED RELIEF**

(Docket No. 60)

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**")

(i) approving the proposed auction and bidding procedures (the "**Bidding Procedures**"), which

are attached as **Schedule 1** hereto, for the potential sale (the "**Sale**") of substantially all of the

assets (the "**Assets**") of the debtors (collectively, the "**Debtors**") in the above-captioned chapter

11 cases (the "**Chapter 11 Cases**") through the proposed sale transaction (the "**Sale**

**Transaction**"); (ii) approving the Debtors' selection of Strike Acquisition LLC as "stalking

horse" bidder (the "**Stalking Horse Bidder**"), authorizing the Debtors' entry into the asset

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Strike, LLC (2120); Strike HoldCo, LLC (0607); Delta Directional Drilling, LLC (9896); Strike Global Holdings, LLC (4661); Capstone Infrastructure Services, LLC (0161); and Crossfire, LLC (7582). The location of Debtor Strike, LLC's principal place of business and the Debtors' service address is: 1800 Hughes Landing Boulevard., Suite 500, The Woodlands, Texas 77380. Additional information regarding this case may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/StrikeLLC.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

1

purchase agreement (the "**Stalking Horse Agreement**") with the Stalking Horse Bidder and approving the reimbursement of certain fees and expenses (the "**Reimbursable Expenses**") in connection therewith; (iii) scheduling an auction for the Assets (the "**Auction**") (if necessary) and a final hearing for approval of the sale of the Assets (the "**Sale Hearing**"); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction (if any) and the Sale Hearing; (v) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**"); and (vi) granting related relief; and upon the First Day Declaration and the Bouley Declaration; and this Court having considered the Motion, and the arguments of counsel made, and the evidence adduced, at the hearing, if any, on the Motion (the "**Bidding Procedures Hearing**"); and, in accordance with Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and applicable Bankruptcy Local Rules, due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation thereon and good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

      A.     This Court has jurisdiction to consider the Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these Chapter 11 Cases and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings, determinations, and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    The predicates for the relief requested by the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014 and applicable Bankruptcy Local Rules.

C.    The relief granted herein is in the best interests of the Debtors, their estates and all other parties in interest.

D.    The Debtors have articulated good and sufficient business reasons for the Court to (i) approve the Bidding Procedures, (ii) approve Strike Acquisition LLC as the Stalking Horse Bidder, authorize entry into the Stalking Horse Agreement and approve the Reimbursable Expenses, (iii) set the date of the Auction and the Sale Hearing, (iv) approve the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing, and (v) approve the Assumption and Assignment Procedures.  The good and sufficient reasons articulated by the Debtors, which were set forth in the Motion and on the record at the Bidding Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

E.    The Debtors provided sufficient and adequate notice of (i) the Motion, (ii) the proposed entry of this Order, (iii) the Bidding Procedures and certain dates and deadlines related thereto, (iv) the Stalking Horse Agreement and the Reimbursable Expenses, (v) reasonably specific identification of the Assets for sale, the Sale Transaction, the Sale Hearing, and the expectation for the proposed Sale to be free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to any sale proceeds, (vi) the Assumption and Assignment Procedures and proposed assumption and assignment of the Assigned Contracts and proposed Cure Amounts in connection with the Sale Transaction, (vii) the Auction (if one is held), (viii) the Bidding

3

Procedures Hearing, and (ix) all related objection deadlines.  Such notice, and the Debtors'
proposed notices, are reasonably calculated to provide all interested parties with timely and
proper notice under Bankruptcy Rules 2002, 6004 and 6006, and no other or further notice of, or
hearing on, each is necessary or required.

F.      The Bidding Procedures, substantially in the form attached hereto as **Schedule 1**,
and incorporated herein by reference as if fully set forth in this Order, are fair, reasonable and
appropriate, were negotiated in good faith by the Debtors and the Stalking Horse Bidder and
represent the best method for conducting a Sale of the Assets and maximizing the value thereof
for the benefit of the Debtors' estates.

G.      The Debtors have demonstrated a compelling and sound business justification for
authorizing entry into the Stalking Horse Agreement and approving the Reimbursable Expenses,
both of which were negotiated at arms'-length and in good faith by the Debtors and the Stalking
Horse Bidder, under the circumstances and timing set forth in the Motion and the Stalking Horse
Agreement.

H.      The Stalking Horse Agreement constitutes the highest and best offer for
substantially all of the Debtors' assets that the Debtors have received to date and the approval of
the relief requested is a necessary and constructive step toward the preservation and realization
of the optimal value of the Assets.  The Stalking Horse Bid facilitates solicitation of the highest
and otherwise best bid for the Assets through the Bidding Procedures.

I.      The Reimbursable Expenses, to the extent payable under the Stalking Horse
Agreement, (i) shall be deemed an actual and necessary cost of preserving the Debtors' estates
within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code treated as an
allowed superpriority administrative expense claim against the Debtors' estates pursuant to

4

sections 503(b) and 507(a)(2) of the Bankruptcy Code, (ii) is reasonable and appropriate, including in light of the size and nature of the Sale Transaction and the commitments that have been made, and efforts that have been and will be expended by, the Stalking Horse Bidder notwithstanding that the proposed transaction may be subject to better and higher offers, (iii) has been negotiated by the parties and their respective advisors at arm's-length and in good faith, and (iv) is necessary to ensure that the Stalking Horse Bidder will continue to pursue the proposed Sale Transaction.  The Reimbursable Expenses were a material inducement for, and a condition of, the Stalking Horse Bidder's entry into the Stalking Horse Agreement.  The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Assets will be realized.

J.      The form and manner of notice of the Bidding Procedures, the Auction, the Assumption and Assignment Procedures, and the Sale Hearing are reasonable, appropriate, and sufficient.

K.      The Assumption and Assignment Procedures are reasonable and appropriate.

L.      Entry of this Order is in the best interests of the Debtors' estates, their creditors and all other interested parties.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

1.      All objections to the relief requested in the Motion, and all reservations of rights included in such objections, that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby **DENIED** or **OVERRULED** on the merits with prejudice.  All withdrawn objections are deemed withdrawn with prejudice.

AMERICAS 110290980
NY 78816120v2

## The Bidding Procedures

2.      The Bidding Procedures attached hereto as **Schedule 1**, are approved.  Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include or reference any particular provision or section of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision or the Bidding Procedures as a whole, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

3.      Notwithstanding anything in the Bidding Procedures to the contrary (1) a party may participate in the bidding process by submitting a bid for (a) all or substantially all of the Assets and/or (b) one or more, or any combination of, Assets, and (2) the purchase agreement submitted by a party as part of a Bid does not need to be based on the Stalking Horse Agreement.

## The Stalking Horse Agreement

4.      The Debtors are authorized to enter into the Stalking Horse Agreement, subject to higher and better Qualified Bids in accordance with the terms and procedures of the Bidding Procedures.  Any obligations of the Debtors set forth in the Stalking Horse Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order are hereby authorized.

## Notice of the Sale Transaction and the Sale Hearing

5.      Within two (2) business days after the entry of the Bidding Procedures Order, or as soon thereafter as practicable (the "**Mailing Date**"), the Debtors (or their agents) shall serve the Stalking Horse Agreement, the Bidding Procedures Order and the Bidding Procedures

6

attached thereto, by first-class mail, postage prepaid, and e-mail (if known) upon the Motion Notice Parties.

6.      The Sale Notice is approved and fully incorporated into this Order.  On the Mailing Date or as soon as practicable thereafter, the Debtors (or their agents) shall serve by first-class mail, postage prepaid, and e-mail (if known) the Sale Notice, substantially in the form attached to this Order as **Schedule 2**, upon the Motion Notice Parties and all other known creditors of the Debtors (including parties who have asserted any lien, encumbrance, claim or other interest in the Assets (if any), the Internal Revenue Service, all applicable state and local taxing authorities in the jurisdictions in which the Debtors may have tax liability, each governmental agency that is an interested party with respect to the sale of the Assets, each counterparty to the Debtors' contracts and leases, and all other parties who have requested notice under Bankruptcy Rule 2002).  Such notice, along with the Assumption and Assignment Notice, shall be sufficient and proper notice of the occurrence of the Sale with respect to known interested parties.

7.      On the Mailing Date or as soon as practicable thereafter, the Debtors shall publish the Sale Notice in *The Wall Street Journal* (National Edition) and *Houston Chronicle*.  Such publication notice shall be deemed sufficient and proper notice of the occurrence of the Sale to any other interested parties whose identities are unknown to the Debtors.

## The Auction

8.      The Debtors are authorized to conduct the Auction with respect to the Assets if one or more Qualified Bids (as such term is defined in the Bidding Procedures) are received (in addition to the Stalking Horse Bid).  The Auction (if any) shall take place on January 26, 2022 at 9:00 a.m. (prevailing Central Time) via remote video conference or in person, at the Debtors'

7

election, *provided, that*, the Debtors shall determine the place and manner for the Auction within 10 days prior to the Bid Deadline.  If no Qualified Bid (or Bid that may be remedied into a Qualified Bid pursuant to the Bidding Procedures and is actually remedied into a Qualified Bid prior to the Auction) other than the Stalking Horse Bid is received by the Bid Deadline, the Debtors shall cancel the Auction, and the Stalking Horse Agreement shall be deemed the Successful Bid and the Stalking Horse Bidder shall be the Successful Bidder.  In that event, the Sale Hearing shall occur on January 26, 2022 at 4:30 p.m. (prevailing Central Time) unless the Committee objects to the acceleration of the occurrence of the Sale Hearing to such date.  The Debtors are authorized, subject to the terms of this Order and the Bidding Procedures, to take actions necessary, in the reasonable discretion of the Debtors, to conduct and implement the Auction.

9.     Except as otherwise determined by the Debtors, only (i) the Debtors, (ii) the Stalking Horse Bidder, (iii) the United States Trustee, (iv) any other Qualified Bidder, (v) each Consultation Party, (vi) any creditor of the Debtors that at least five (5) Business Days prior to the Auction delivers to Debtors' counsel a written request to attend the Auction (by email to Barrett.Lingle@whitecase.com) and (vii) in each case, their representatives and counsel, shall attend the Auction (which may be virtual); *provided*, that the Debtors may, in their discretion, establish a reasonable limit on the number of advisors that may appear on behalf of each party covered by clause (vi).  Only the Stalking Horse Bidder and other Qualified Bidders will be entitled to make any Bids at the Auction.

10.     The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed and shall be conducted openly.  Each Qualified Bidder participating in the Auction, including the Stalking Horse Bidder, must confirm on the record at

AMERICAS 110290980
NY 78816120v2

the commencement of the Auction that (i) it has not (A) engaged in any collusion with respect to the bidding or sale of any of the Assets described herein, (B) coordinated or joined with any other party for purposes of submitting a Bid or Bids or participating in the Auction without the prior consent of the Debtors, or (C) taken any other action to prevent a transparent and competitive auction process, (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the Sale Transaction contemplated by such Qualified Bid if selected as the Successful Bidder, (iii) it has reviewed, understands and accepts the Bidding Procedures, and (iv) it has consented to the core jurisdiction of the Court with respect to the Sale, including the Bidding Procedures, the Auction, the Stalking Horse Agreement, any Competing Transaction, any Modified APA, or the construction and enforcement of documents relating to any Competing Transaction (as described more fully below).

11.     The Debtors may, as they reasonably determine in their discretion to be in the best interest of their estates, and after consultation with the Consultation Parties, pursuant to, and in accordance with, the Bidding Procedures (i) determine which Bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and otherwise best Bid and which is the next highest and otherwise best Bid; (iv) reject, at any time prior to the closing of the Auction, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) impose additional terms and conditions with respect to any Bidder (other than the Stalking Horse Bidder); (vi) include any other party as a Consultation Party or attendee at the Auction; and (vii) make non-material modifications to the Bidding Procedures and implement additional procedural rules with respect to the conduct of the Auction (together with the Bidding

AMERICAS 110290980
NY 78816120v2

Procedures, the "**Auction Rules**"), so long as such rules are not inconsistent with any Court order or any rights of the Stalking Horse Bidder under these Bidding Procedures, *provided*, that nothing herein shall limit any party in interest's right to file an objection with the Court with respect to any Auction Rules (other than the Bidding Procedures).  The process and requirements associated with submitting a Qualified Bid are approved as fair, reasonable, appropriate and designated to maximize recoveries for the benefit of the Debtors' estates, creditors and other parties in interest.

12.     For the avoidance of doubt, pursuant to the Bidding Procedures, the Stalking Horse Agreement submitted by the Stalking Horse Bidder shall be deemed a Qualified Bid in all respects; each of the Stalking Horse Bidder, the AIP Parties, and the DIP Agent, the Prepetition Senior Loan Agent and/or the Prepetition Junior Loan Agent, on behalf of the Stalking Horse Bidder, shall be deemed a Qualified Bidder for all purposes and shall not be disqualified as a Qualified Bidder; the Stalking Horse Bidder shall not be required to provide a Good Faith Deposit, any evidence of committed financing or unconditional access to funds, additional information, or due diligence access to the Debtors to participate in the Auction; and the Stalking Horse Bidder shall not be required to be a Back-Up Bidder unless the Stalking Horse Bidder expressly agrees in writing to serve as a Back-Up Bidder.  Any sale on the terms set forth in the Stalking Horse Agreement, and approval of the terms of the Sale Order, are subject to further Court approval.

13.     The Committee shall have until January 17, 2022 at 4:00 p.m. (prevailing Central Time) or such later date as ordered by the Court, to commence a Challenge with respect to the amount, validity, perfection, enforceability, priority or extent of the Prepetition Liens or Prepetition Secured Obligations (including any Prepetition Secured Obligations that are deemed

10

"rolled up" into the DIP Roll Up Facility) (each such term as defined in the Interim DIP Order or the Final DIP Order, as applicable) or any Challenge against any of the Prepetition Secured Parties or their Representatives pursuant to the terms of the Interim DIP Order or the Final DIP Order, as applicable by filing a complaint with the Court prior to such date and time in respect of any such Challenge; *provided*, that the Committee shall not be required to file a motion seeking standing to bring any such Challenge; and *provided, further, that,* the Committee is not foreclosed from seeking additional time from the Court to commence such a challenge. To the extent such a Challenge is timely filed by the Committee and the Court has not otherwise granted an extension of time, a hearing with respect to that action will be held on January 20, 2022. To the extent that no such Challenge is brought by the Committee, or the Court orders otherwise, the Stalking Horse Bidder, the AIP Parties, the DIP Agent, the Prepetition Senior Loan Agent, and the Prepetition Junior Loan Agent shall be permitted to participate in the Auction and credit bid all or any portion of the DIP Claims, the Prepetition Senior Loan Claims, and the Prepetition Junior Loan Claims in accordance with the terms of the DIP Facility Documents, the Prepetition Senior Loan Documents, and the Prepetition Junior Loan Documents (the "Secured Lender Credit Bid"). For the avoidance of doubt, the DIP Term Facility (as defined in the Interim DIP Order or the Final DIP Order, as applicable) shall not be subject to any Challenge.

14.     The Good Faith Deposits of all Qualified Bidders (other than the Stalking Horse Bidder, who shall not be required to provide a Good Faith Deposit) shall be held in one or more escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court.  The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Back-Up Bidder shall be returned to such Qualified Bidder not later than five (5) Business Days after the Sale Hearing.  The Good Faith Deposit of the Back-Up

AMERICAS 110290980
NY 78816120v2

Bidder, if any, shall be returned to the Back-Up Bidder (or retained by the estates) upon the termination of such Back-Up Bidder's Modified APA in accordance with its terms.  If the Successful Bidder timely closes the transaction contemplated in the Successful Bid, its Good Faith Deposit shall be credited towards the purchase price and shall become property of the estate.  If the Successful Bidder (or, if the Sale is to be consummated with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such Bidder as provided in the Stalking Horse Agreement or the Modified APA of the Successful Bidder, then the Debtors and their estates shall be entitled to retain the Good Faith Deposit of the Successful Bidder (or, if the Sale is to be consummated with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.  For the avoidance of doubt, the Debtors' retention of a Good Faith Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to the Successful Bidder's or the Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved.

15.     As soon as possible after the conclusion of the Auction (or, if no Qualified Bid other than the Stalking Horse Bid is timely received, as soon as reasonably practicable after the Bid Deadline), the Debtors shall file a notice identifying any Successful Bidder and, if applicable, Back-Up Bidder, a copy of the Successful Bid and, if applicable, Back-Up Bid, the date and time of the Sale Hearing (the "**Post Auction Notice**"), and, if the Stalking Horse Bidder is not the Successful Bidder, the applicable deadline to file an Adequate Assurance Objection (defined below).

AMERICAS 110290980
NY 78816120v2

**The Reimbursable Expenses**

16.     Pursuant to Bankruptcy Code sections 105, 363, 503, and 507, the Reimbursable Expenses set forth in the Stalking Horse Agreement are hereby approved, and the Debtors are hereby authorized, and shall be obligated, to pay the Reimbursable Expenses pursuant to and subject to the terms and conditions set forth in the Stalking Horse Agreement without further authorization or order from this Court.  Upon entry of this Order, the amounts due and payable, or that become due and payable, under the Reimbursable Expenses in accordance with the Stalking Horse Agreement and this Order shall constitute a superpriority administrative expense of the Debtors' estates pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(a) of the Bankruptcy Code; provided that the Reimbursable Expenses shall be immediately junior to any carve-out granted pursuant to the DIP Order.  Nothing in this Order shall affect the AIP Parties' rights to seek reimbursement for expenses or other adequate protection pursuant to any other order of the Court.

**The Sale Hearing and Objections to the Sale Transaction**

17.     The hearing to approve the sale of the Assets to the Successful Bidder shall be held before the Court on January 27, 2022 at 11:00 a.m. (prevailing Central Time) (the "**Sale Hearing**"); *provided, that*, if no Qualified Bid, other than the Stalking Horse Bid, is received by the Auction Date, the Sale Hearing shall occur on January 26, 2022 at 4:30 p.m. (prevailing Central Time) unless the Committee objects to the acceleration of the occurrence of the Sale Hearing to such date.

18.     Objections, if any, to the Sale Transaction (a "**Sale Objection**") other than Assignment Objections (as defined below), including any objection to the sale of any Assets free

13

and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code to a Successful Bidder and/or a Backup Bidder, as applicable, and the entry of any Sale Order, must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and all orders of this Court, (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor and (d) be filed with the Court **on or before January 19, 2022 at 4:00 p.m. (prevailing Central Time)** (the "**Sale Objection Deadline**"), except that any party may file or supplement an objection after the Sale Objection Deadline solely with respect to the events at or following the Auction and shall submit such objection before the Sale Hearing is scheduled to commence.

19.     If any party fails to timely file with the Court and serve a Sale Objection by the Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures regarding an objection to the Sale Transaction, such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion, or to the consummation and performance of the Sale Transaction, including the transfer of the Assets to the Successful Bidder, free and clear of all liens, claims, interests and Encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" for the purposes of section 363(f) of the Bankruptcy Code.

20.     Notwithstanding the foregoing or anything herein to the contrary, the deadline to file an Assignment Objection to assumption and assignment of an Assigned Contract, such as a Cure Objection or an Adequate Assurance Objection (each as defined below) in connection with a proposed Sale Transaction to a Successful Bidder or to the Back-Up Bidder, shall be as set forth below.

**Assumption and Assignment Procedures**

21.     The Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all counterparties to Assigned Contracts, and are **APPROVED**.

22.     The Assumption and Assignment Notice attached hereto as **Schedule 3** is reasonable, fair and appropriate and is approved and fully incorporated into this Order.  The failure to specifically include in this Order a reference to any particular provision of the Assumption and Assignment Notice or the Assumption and Assignment Procedures shall not diminish or impair the effectiveness of such provision.

23.     On or before December 29, 2021 at 4:00 p.m. (prevailing Central Time), the Debtors shall file with this Court and serve on each party (a "**Contract Notice Party**") to an executory contract or unexpired lease that is proposed to be assumed and assigned by the Debtors as part of the Sale Transaction (each, an "**Assigned Contract**"), a notice (the "**Initial Assumption and Assignment Notice**") that shall (i) identify the Assigned Contracts (including the name and address of each Contract Notice Party); (ii) state the cure amounts as of the Petition Date that the Debtors believe are necessary to be paid to assume such Assigned Contracts pursuant to section 365 of the Bankruptcy Code (the "**Cure Amount**"); (iii) notify the Contract Notice Party that such party's contract or lease may be assumed and assigned to a purchaser of the Assets at the conclusion of the Auction; (iv) state the date of the Sale Hearing and that objections to any Cure Amount or otherwise to assumption and assignment of the Assigned Contracts identified on the applicable Assumption and Assignment Notice will be heard at the Sale Hearing or at a later hearing, as determined by the Debtors and the Successful Bidder; (v) state that the proposed assignee has demonstrated its ability to comply with the requirements of adequate assurance of future performance of the Assigned Contracts under section

15

365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including, without limitation, the assignee's financial wherewithal and willingness to perform under such executory contract or unexpired lease (such information, the "**Adequate Assurance Information**"); and (vi) state the Assignment Objection Deadline (as defined below) by which the applicable Contract Notice Party must file an objection to the Cure Amount (specifically, a "**Cure Objection**") or otherwise to the assumption and assignment of the Assigned Contracts (any such objection, an "**Assignment Objection**").

24.    The Debtors may file and serve supplemental Assumption and Assignment Notices (a "**Supplemental Assumption and Assignment Notice**" and, together with the Initial Assumption and Assignment Notice, an "**Assumption and Assignment Notice**") to add Assigned Contracts, remove Assigned Contracts that were included on a previously filed Assumption and Assignment Notice, or revise the Cure Amounts for an Assigned Contract included in a previous Assumption and Assignment Notice.  To the extent applicable, the Supplemental Assumption and Assignment Notice shall include the proposed Cure Amount (or revised Cure Amount) for each Assigned Contract set forth in the Supplemental Assumption and Assignment Notice.

25.    The inclusion of an Assigned Contract on an Assumption and Assignment Notice will not (a) obligate the Debtors to assume any Assigned Contract listed thereon nor the Successful Bidder(s) to take assignment of such Assigned Contract or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease or that the stated Cure Amount is due.[4]

---

[4] For the avoidance of doubt, the Debtors reserve all of their rights, claims, and causes of action with respect to the contracts, leases, and agreements listed on the Assumption and Assignment Notice.

16

26.     Except as otherwise specified in the applicable Assumption and Assignment Notice, any Assignment Objection, including a Cure Objection, must (a) be in writing, (b) state with specificity the nature of the objection and, if the objection includes a Cure Objection, what Cure Amount the party to the Assigned Contract believes is required if different than the amount listed in the applicable Assumption and Assignment Notice (with appropriate documentation in support thereof), (c) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and any orders of the Court and (d) be filed with the Court **on or before January 12, 2022 at 4:00 p.m. (prevailing Central Time),** or with respect to an Assigned Contract included in a Supplemental Assumption and Assignment Notice, **the date that is the later of (A) January 12, 2022 at 4:00 p.m. (prevailing Central Time), and (B) 4:00 p.m. (prevailing Central Time) on the date that is seven (7) days after service of the Supplemental Assumption and Assignment Notice (**any of the foregoing deadlines, an **"Assignment Objection Deadline")**.

27.     Upon written request by a counterparty (an "**Adequate Assurance Information Request**"), Adequate Assurance Information may be provided to such counterparty on a confidential basis.  Any Assignment Objection filed with the Court that includes confidential, non-public Adequate Assurance Information must and is hereby authorized to be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors, the Stalking Horse Bidder and the applicable assignee or assignees.  Unredacted versions of such Assignment Objections shall be served upon the Debtors, the Committee, the U.S. Trustee and the applicable assignee or assignees, with a copy to the Court's chambers.

28.     If a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, then counterparties may submit a new Adequate Assurance Information Request to the

17

Debtors and the deadline to object to assumption and assignment based on adequate assurance of future performance (an "**Adequate Assurance Objection**") by such Successful Bidder shall be extended to the date that is one (1) Business Day before the Sale Hearing; *provided*, *however*, that all other Assignment Objections, including Cure Objections, must be filed by the applicable Assignment Objection Deadline regardless of whether the Stalking Horse Bidder is the Successful Bidder.

29.      Parties will be permitted to reply to Adequate Assurance Objections in writing prior to the Sale Hearing and/or respond orally at the Sale Hearing.

30.      Except as otherwise provided herein, Assignment Objections (other than Assignment Objections that are subject to an Assignment Objection Deadline occurring after the Sale Hearing) will be heard at the Sale Hearing and the Debtors may seek Court approval of assumption and assignment of the Assigned Contracts to the Successful Bidder at the Sale Hearing, unless mutually agreed to otherwise by the objecting party, the Debtors and the Successful Bidder.  In the case of an Assigned Contract for which the Assignment Objection Deadline is after the Sale Hearing and as to which an Assignment Objection is filed prior to such Assignment Objection Deadline, the Debtors may seek an expedited hearing of such Assignment Objection before the Court.

31.      If a timely Cure Objection cannot be resolved by the parties, the Cure Objection may be heard at the Sale Hearing or, at the option of the Debtors, in consultation with the Successful Bidder, be adjourned to a subsequent hearing (each such Cure Objection, an "**Adjourned Cure Objection**").  An Adjourned Cure Objection may be resolved after the closing date of the Sale Transaction.

18

32.     To the extent the only Assignment Objection with respect to an Assigned Contract is a Cure Objection, the Debtors shall be entitled to assume and assign the applicable Assigned Contract prior to the resolution of the Cure Objection provided that the Debtors shall, within ten (10) Business Days after the entry of the Sale Order, establish or cause to be established a cash reserve in an amount sufficient to pay the disputed Cure Amounts in full with such cash reserve to be funded by the Successful Bidder based on the maximum amounts owed by the Debtors with respect to such disputed Cure Amounts to the extent set forth in the Sale Order.  To the extent the Cure Objection is resolved or determined unfavorably to the applicable Debtor, the Debtors may, subject to the terms of the agreement with the Successful Bidder, reject the applicable Assigned Contract after such unfavorable resolution or determination.

33.     If no Assignment Objection is timely filed with respect to an Assigned Contract, then (i) the counterparty to such Assigned Contract shall be (a) deemed to have consented to, and shall be forever barred from objecting to (1) the Cure Amount set forth in the applicable Assumption and Assignment Notice, and (2) the assumption of the Assigned Contract by the Debtors and the assignment of the Assigned Contract to the Successful Bidder, and (b) forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder, or the property of any of them, that (1) any Cure Amount, other than the Cure Amount listed on the applicable Assumption and Assignment Notice, is due, (2) any defaults exist under such Assigned Contract, (3) any "change of control" (or terms or phrases of a similar nature) shall have occurred under such Assigned Contract, (4) any conditions to assumption and assignment of such Assigned Contract must be satisfied (whether pursuant to section 365(b)(1) of the Bankruptcy Code or otherwise), and (5) there are any other claims related to such Assigned Contract that existed prior to, or as a result of, the assumption and assignment of such Assigned

Contract; and (ii) any and all defaults under the Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) of the Bankruptcy Code upon payment of the Cure Costs set forth in the Assumption and Assignment Notice for such Assigned Contract.  If no Assignment Objection is timely filed with respect to an Assigned Contract for which the Assignment Objection Deadline is after the Sale Hearing, then the assumption and assignment and Cure Amount with respect to such Assigned Contract shall be deemed approved by the Sale Order without further order of this Court.

### Related Relief

34.     For the avoidance of doubt, (x) nothing contained in this Order or the Bid Procedures shall affect or impair any statutory trust funds, if any, held by any of the Debtors pursuant to the Texas Construction Fund Act contained in Chapter 162 of the Texas Property Code, and (y) nothing in this Order or the Bid Procedures shall constitute a determination of the application of the Texas Construction Fund Act or the existence of any trust funds thereunder.

35.     Nothing in this Order shall affect the rights of Mears Group, Inc. to object to the approval of the Sale Transaction, including on the grounds raised in its limited objection to the Motion [D.I. 224].

36.     Nothing in this Order shall affect the rights of Aspen American Insurance Company to object to the approval of the Sale Transaction, including on the grounds raised in its limited objection to the Motion [D.I. 222].

37.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

38.     The Debtors are hereby authorized and empowered to take such actions as may be necessary to implement and effect the terms and requirements established by this Order.

AMERICAS 110290980
NY 78816120v2

39.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

40.     The requirements set forth in Bankruptcy Local Rule 9013-1 and the Procedures for Complex Cases in the Southern District of Texas are satisfied by the contents of the Bidding Procedures Motion.

41.     The Stalking Horse Bidder has standing to enforce the terms of this Order.

42.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7052, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

43.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Reimbursable Expenses, the Stalking Horse Agreement, the Bidding Procedures, any Modified APA, any Competing Transaction, any Qualified Bid, and the implementation of this Order.

**Signed:  December 23, 2021.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## **Schedule 1**

**Bidding Procedures**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| STRIKE, LLC, *et al.*[1] | ) Case No. 21-90054 (DRJ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## BIDDING PROCEDURES

On December 6, 2021, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Bankruptcy Court**"), commencing the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

On December 23, 2021, the Bankruptcy Court entered an order approving the Bidding Procedures set forth below [Docket No. [●]] (the "**Bidding Procedures Order**").[2] The Bidding Procedures set forth the process to determine the highest and otherwise best offer for a sale (the "**Sale**" or "**Sale Transaction**") of substantially all of the assets (the "**Assets**") of the Debtors. The Debtors will provide interested parties with the opportunity to qualify for and participate in an auction (the "**Auction**") to be conducted by the Debtors. The Debtors, in consultation with the Consultation Parties, shall determine the highest and otherwise best offer for the sale of the Assets.

The Bidding Procedures Order also authorized, among other things, the Debtors' entrance into that certain Asset Purchase Agreement dated as of December 6, 2021, as amended to date, (the "**Stalking Horse Agreement**") with Strike Acquisition LLC (the "**Stalking Horse Bidder**"), a newly-formed entity organized and controlled by AIPCF VII Strike Holdings, LP ("**AIP**") and certain funds and entities managed by or affiliated with AIP that are beneficial owners (or nominees, investment managers, advisors or subadvisors for the beneficial owners) of certain secured obligations of the Debtors (collectively with AIP, the "**AIP Parties**"), pursuant to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Strike, LLC (2120); Strike HoldCo, LLC (0607); Delta Directional Drilling, LLC (9896); Strike Global Holdings, LLC (4661); Capstone Infrastructure Services, LLC (0161); and Crossfire, LLC (7582).  The location of Debtor Strike, LLC's principal place of business and the Debtors' service address is: 1800 Hughes Landing Boulevard, Suite 500, The Woodlands, Texas 77380.  Additional information regarding this case may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/StrikeLLC.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

which the Stalking Horse Bidder has agreed to purchase substantially all of the assets of the Debtors (the "**Stalking Horse Assets**") and to assume certain liabilities of the Debtors (the "**Assumed Liabilities**"), each as specifically enumerated in the Stalking Horse Agreement and subject to the terms and conditions set forth therein.  The Stalking Horse Agreement shall serve as the stalking horse bid ("**Stalking Horse Bid**"), subject to higher and better bids in accordance with these Bidding Procedures (the "**Bidding Procedures**").

> **COPIES OF THE BIDDING PROCEDURES ORDER OR ANY OTHER DOCUMENTS IN THE DEBTORS' CHAPTER 11 CASES ARE AVAILABLE UPON REQUEST TO EPIQ SYSTEMS, INC. BY CALLING (888) 675-2860 (TOLL FREE) OR (503) 520-4488 (INTERNATIONAL) OR VISITING THE DEBTORS' RESTRUCTURING WEBSITE AT https://dm.epiq11.com/StrikeLLC.**

## Assets to Be Auctioned

The Debtors are selling all of the Assets, which are expressly described in the Stalking Horse Agreement.  Except as otherwise provided in the Stalking Horse Agreement or a Modified APA (as defined below) submitted by a Successful Bidder (as defined below), all of the Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "**Interests**"), subject only to the Assumed Liabilities and Permitted Encumbrances (each as defined in the Stalking Horse Agreement or in the Modified APA of the Successful Bidder, as applicable), to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity, force, effect, and priority as such Interests applied against the Assets as of the Petition Date, subject to any rights, claims, and defenses of the Debtors.  A party may participate in the bidding process by submitting a bid for (a) all or substantially all of the Assets and/or (b) one or more, or any combination of, Assets.

## Key Dates and Deadlines

The key dates and deadlines (the "**Deadlines**") for the sale process are as follows:

| Deadline | Item |
|---|---|
| **December 29, 2021 at 4:00 p.m. (prevailing Central Time)** | Deadline to file Initial Assumption and Assignment Notice |
| **December 30, 2021 at 4:00 p.m. (prevailing Central Time)** | Deadline for the Debtors to file and serve Stalking Horse Agreement, Bidding Procedures, Sale Notice, and Publication Notice |
| **January 12, 2022 at 4:00 p.m. (prevailing Central Time)** | Deadline to file Assignment Objections, including Cure Objections and Adequate Assurance Objections |
| **January 19, 2022 at 4:00 p.m. (prevailing Central Time)** | Deadline for Objections to the Sale Transaction other than Assignment Objections |
| **January 24, 2022 at 11:59 p.m. (prevailing Central Time)** | Bid Deadline |

| Deadline | Item |
|---|---|
| **January 26, 2022 at 9:00 a.m. (prevailing Central Time)** | Auction Date, in a virtual room hosted by the Debtors' counsel or as otherwise communicated to all Qualified Bidders and Consultation Parties |
| **January 27, 2022 at 11:00 a.m. (prevailing Central Time)** | Sale Hearing, *provided, that* if no Qualified Bid, other than the Stalking Horse Bid, is received by the Auction Date, then the Sale Hearing shall occur on January 26, 2022 at 4:30 p.m. (prevailing Central Time) unless the Committee objects to the acceleration of the occurrence of the Sale Hearing to such date. |

## Consultation Parties

The Debtors shall consult with (i) counsel for AIP, and (ii) any appointed statutory committee under 11 U.S.C. § 1102 in the Chapter 11 Cases (a "**Committee**" and together with AIP, the "**Consultation Parties**" and each, a "**Consultation Party**") as provided for herein; *provided however*, that, the Debtors shall not be required to consult with any Consultation Party (and its advisors) that submits a Bid (as defined below) or has a Bid submitted on its behalf, for so long as such Bid remains open; *provided further*, that, for the avoidance of doubt, none of AIP, the DIP Agent, the Prepetition Senior Loan Agent, the Prepetition Junior Loan Agent and their respective counsel or any of their respective Affiliates shall be deemed to be Consultation Parties unless AIP shall have irrevocably withdrawn its Bid and/or the Stalking Horse Agreement is terminated.

## Qualifications to Submit Bids and Participate in Auction

A.     **Diligence Materials**

To participate in the bidding process for the Sale and to receive access to due diligence materials (the "**Diligence Materials**"), a party (other than the Stalking Horse Bidder) must submit to the Debtors (i) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors and (ii) reasonable evidence demonstrating the party's financial capability to consummate a Sale Transaction with respect to the Assets on terms that are the same or better than the terms of the Stalking Horse Agreement (a "**Competing Transaction**") as determined by the Debtors in their reasonable business judgment.  The Debtors shall consult with the Consultation Parties with respect to any determination that a party has not provided the information required in clause (ii) in the immediately preceding sentence.  ***No party will be permitted to conduct any due diligence without entering into a confidentiality agreement described in clause (i).***

A party who qualifies for access to Diligence Materials shall be a "**Preliminary Interested Investor**."   The Debtors will afford any Preliminary Interested Investor access to Diligence Materials and the time and opportunity to conduct due diligence, as determined by the Debtors in their reasonable discretion; *provided, however,* that the Debtors shall not furnish any further due diligence information to any Preliminary Interested Investor that does not submit a

Qualified Bid by the Bid Deadline.  The Debtors reserve the right to withhold or modify any Diligence Materials that the Debtors determine in good faith are business-sensitive or otherwise not appropriate for disclosure to a Preliminary Interested Investor who is a competitor, vendor, or customer of the Debtors or is directly or indirectly affiliated with any competitor, vendor, or customer of the Debtors.  Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any Person that is not determined to be a Preliminary Interested Investor.

All due diligence requests must be directed to Jason Lawrence (jlawrence@opportune.com) and Bruce Baker (bbaker@Dacarba.com) at Opportune Partners, LLC.

## B.      Due Diligence from Bidders

Each Preliminary Interested Investor and Bidder (as defined below) shall comply with all reasonable requests with respect to information and due diligence access by the Debtors or their advisors regarding such Preliminary Interested Investor or Bidder, as applicable, and its contemplated Sale Transaction.

## C.      Bid Deadline and Auction Qualification Process

To be eligible to participate in the Auction, a party must be a Preliminary Interested Investor and must submit a written offer for a Competing Transaction (each, a "**Bid**" and the Preliminary Interested Investor that submits a Bid, a "**Bidder**") that must (i) be determined by the Debtors, in consultation with the Consultation Parties, to satisfy the conditions set forth in this section and (ii) be ***actually received*** by (a) counsel to the Debtors, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131 Attn: Thomas E Lauria (tlauria@whitecase.com) and Matthew Brown (mbrown@whitecase.com), White & Case LLP, 111 South Wacker Drive, Suite 5100 Chicago, IL 60606, Attn: Andrew F. O'Neill (aoneill@whitecase.com),  and White & Case LLP, 555 S. Flower St., Suite 2700, Los Angeles, CA 90071, Attn: Aaron Colodny (aaron.colodny@whitecase.com), (b) the Debtors' investment banker and financial advisor, Opportune Partners, LLC, 711 Louisiana Street, Suite 3100, Houston, TX 77002, Attn: Ryan Bouley (rbouley@opportune.com) and Jason Lawrence (jlawrence@opportune.com), (c) counsel to the Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Philip Dublin (pdublin@akingump.com), Meredith Lahaie (mlahaie@akingump.com) and Gary Ritacco (gritacco@akingump.com) and (d) the Committee's financial advisor, FTI Consulting, Inc., 1301 McKinney Street, Suite 3500, Houston, TX 77010, Attn: Samuel Starr (samuel.star@fticonsulting.com) and Michael Bui (Michael.bui@fticonsulting.com) **on or before January 24, 2022 at 11:59 p.m.** (prevailing Central Time) (the "**Bid Deadline**").

In order for a Bid to be deemed qualified for the Auction, such Bid shall satisfy each of the following conditions:

1.  <u>Executed Agreement</u>: Each Bid must include an offer letter, signed by an authorized representative of the Bidder, pursuant to which the Bidder offers to consummate the Competing Transaction contemplated by such Bid on the terms set forth in the Modified APA (as defined below), together with (i) an asset purchase agreement,

signed by an authorized representative of the Bidder, pursuant to which the Bidder agrees to consummate such Competing Transaction (a "**Modified APA**"), and (ii) a modified Proposed Sale Order (as defined below) (if any) (a "**Modified Sale Order**"). If a Bid is based on the Stalking Horse Agreement, it must also include a redline of the Modified APA marked against the Stalking Horse Agreement to show all changes requested by the Bidder with respect to the Stalking Horse Agreement. Each bid must include a Modified Sale Order (if any) marked against the form of Sale Order annexed to the Bidding Procedures Motion as <u>Exhibit C</u> (the "**Proposed Sale Order**") to show all changes requested by the Bidder with respect to the Proposed Sale Order. Each Modified APA must provide (1) a commitment to close the Competing Transaction contemplated by such Modified APA within two (2) Business Days after all closing conditions set forth in such Modified APA are met (other than those which are to be satisfied at the closing of the transactions contemplated by such Modified APA), and (2) a covenant that the Bidder will (a) make, or will cause its "ultimate parent entity" (as defined by the rules to the HSR Act) to make, all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "**HSR Act**") and for all other applicable regulatory approvals and (b) submit all necessary filings under the HSR Act and for all other applicable regulatory approvals within ten (10) days following the effective date of the Modified APA.

2. <u>Good Faith Deposit</u>: Each Bid must be accompanied by a cash deposit in the amount of ten percent (10%) of the cash purchase price contained in the Modified APA, before any adjustments to the purchase price, to an escrow account to be identified and established by the Debtors (the "**Good Faith Deposit**").

3. <u>Minimum Bid</u>. Each Bid must consist of only cash consideration (other than the Assumed Liabilities) to be paid at the closing of the transactions contemplated by the Modified APA for the Assets in an amount equal to at least the sum of (A) the Purchase Price set forth in the Stalking Horse Agreement (excluding the Assumed Liabilities),[3] (B) the Reimbursable Expenses Amount (as defined below), and (C) $750,000. Each Bid must set forth the total purchase price for such Bid.

4. <u>Purchased Assets and Assumed Liabilities</u>: Each Bid must clearly provide which of the Assets the Bidder seeks to acquire, and which of the Assumed Liabilities the Bidder agrees to assume.

5. <u>Designation of Assigned Contracts and Leases</u>: Each Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to be assumed and assigned to the Bidder at the closing of the Competing Transaction contemplated by such Bid.

6. <u>Corporate Authority</u>: Each Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate or similar governance authorization of the Bidder to consummate the proposed Competing Transaction; *provided* that, if the Bidder is an entity specially formed for the purpose of

---

[3] The Stalking Horse Bidder shall file a notice estimating the credit bid portion of the Purchase Price provided in the Stalking Horse Agreement on the Bankruptcy Court's docket no later than December 24, 2021.

effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Competing Transaction by the equity holder(s) of such Bidder and any other governing body of the Bidder that is required to approve the Competing Transaction.

7. <u>Disclosure of Identity of Bidder</u>: Each Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets or otherwise directly or indirectly participating in connection with such Bid (including any affiliates of the Bidder), and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the Bid.

8. <u>Proof of Financial Ability to Perform</u>: Each Bid must include written evidence that the Debtors conclude, in consultation with the Consultation Parties, demonstrates that the Bidder has the necessary financial ability to (i) timely close the Competing Transaction contemplated by such Bid within two (2) Business Days after all closing conditions set forth in the Modified APA are met, and (ii) provide adequate assurance of future performance under all contracts to be assumed and assigned in such Competing Transaction.  Such information must include, *inter alia*, the following:

   a. Contact names and numbers for verification of third party financing sources, if any;

   b. Written evidence of the Bidder's internal financial resources and ability to finance its Bid with cash on hand, available lines of credit, uncalled capital commitments or otherwise available funds (including through the posting of an irrevocable letter of credit or customary debt or equity financing commitment letters that comply with the requirements of this sub-paragraph 8(b) or sub-paragraph 8(c) below, as applicable, in each case, from reputable financial institutions (as determined in the Debtors' reasonable discretion)) in an aggregate amount sufficient to pay the cash purchase price contemplated by such Bid, to pay for cure costs for contracts to be assumed and assigned in the Competing Transaction, and to satisfy all other obligations of the Bidder pursuant to the Modified APA ("**Bidder's Obligations**"); *provided*, that if the Bidder is an entity that is specially formed for the purpose of effectuating the Competing Transaction, or if the Bidder intends to raise any equity financing to fund any portion of Bidder's Obligations, then the Bidder must furnish to the Debtors a fully executed and effective equity commitment letter or guarantee  (which equity commitment letter or guaranty shall remain outstanding until at least sixty (60) days after the date of entry of the Sale Order from its equity holders or other affiliated entities with respect to the portion of Bidder's Obligations that are not financed with debt financing or to be paid with cash on hand (which equity commitment letter or guarantee may not be subject to any conditions other than the satisfaction of the conditions set forth in the Modified APA) and provide written evidence that its equity holders or other affiliated entities have the resources and ability to finance such portion of the Bidder's Obligations;

    c. Without limiting the requirements of sub-paragraph 8(b) above, if the Bidder intends to raise any debt financing to fund any portion of the Bidder's Obligations, the Bid must include fully executed and effective debt financing commitment letter(s), which letter(s) shall (i) not be subject to any internal approvals, credit committee approvals or diligence conditions, (ii) be in customary form, and (iii) remain outstanding until sixty (60) days after the date of entry of the Sale Order;

    d. The Bidder's most current audited (if any) and most current unaudited financial statements or, if the Bidder is an entity formed for the purpose of making a Bid, the most current audited (if any) and most current unaudited financial statements of the equity holder(s) of the Bidder or such other form of financial disclosure reasonably acceptable to the Debtors;

    e. A description of the Bidder's pro forma capital structure, including any debt maturities and associated interest and debt service obligations; and

    f. Any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors demonstrating that such Bidder (or, if the Bidder is an entity formed for the purpose of making a Bid, its equity holders) has the ability to close the Competing Transaction on the terms set forth in the Modified APA.

9. <u>Regulatory and Third-Party Approvals</u>: Each Bid must set forth each government, licensing, regulatory, and other third-party approval or filing required to be obtained or made by the Bidder, and each waiting period required to have expired or terminated, for the Bidder to consummate the Competing Transaction, and the time period within which the Bidder expects to receive such approvals, to make such filings or such waiting periods to expire or terminate (and in the case that receipt of any such approval, the making of any such filing, or the expiration or termination of any such waiting period is expected to take more than fifteen (15) days following execution and delivery of the Modified APA, those actions the Bidder will take to ensure receipt of such approval(s), the making of such filing(s) or the expiration or termination of such waiting period(s) as promptly as possible).

10. <u>Contact Information and Affiliates</u>:  Each Bid must provide the contact information for the Bidder and affiliates of the Bidder identified in item 7 above.

11. <u>Contingencies and Other Provisions</u>: Each Bid (i) shall not contain any representations and warranties, covenants, or termination rights materially more onerous or unfavorable to the Debtors than those set forth in the Stalking Horse Agreement, (ii) shall not contain any escrow arrangements, indemnities or adjustments to purchase price, and (iii) shall not contain conditions or contingencies of any kind more onerous than those conditions or contingencies set forth in the Stalking Horse Agreement.  Without limiting clause (ii) of the immediately preceding sentence, each Bid shall not include any conditions or contingencies relating to financing, internal approvals, or due diligence, or the absence of any material adverse effect (in each case except as such terms are included in the Stalking Horse Agreement).

12. <u>Acknowledgement of Independent Review</u>: Each Bid must include a written acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, or the accuracy or completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures.

13. <u>Irrevocable</u>: If a Bid is accepted as the Successful Bid or the Back-Up Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

14. <u>Compliance with Diligence Requests</u>: The Bidder submitting the Bid must have complied with reasonable requests for additional information and due diligence access from the Debtors to the reasonable satisfaction of the Debtors.

15. <u>Back-Up Bid</u>: Each Bid shall provide that the Bidder will serve as backup bidder if the Bidder's Bid is selected as the next highest and otherwise best bid after the Successful Bid.

16. <u>Consent to Jurisdiction</u>: Each Bidder must (i) consent to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, the Stalking Horse Agreement, any Competing Transaction, any Modified APA, or the construction and enforcement of documents relating to any Competing Transaction, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, the Stalking Horse Agreement, any Competing Transaction, any Modified APA, or the construction and enforcement of documents relating to any Competing Transaction, and (iii) consent to the entry of a final order or judgment in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, the Stalking Horse Agreement, any Modified APA, any Competing Transaction, or the construction and enforcement of documents relating to any Competing Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

17. <u>Disclaimer of Break-Up Fees and Expense Reimbursement</u>: Each Bid must not entitle the Bidder to any break-up fee, termination fee or similar type of payment, compensation or expense reimbursement and, by submitting the Bid, the Bidder waives the right to pursue any administrative expense claim (including under a theory of substantial contribution) under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction.

18. <u>Acknowledgement of Remedies</u>.  Each Bid shall include a written acknowledgement from the Bidder that, in the event of the Bidder's breach of, or failure to perform under, the Modified APA, the Debtors and their estates shall be entitled to pursue all

available legal and equitable remedies, including, without limitation, retention of the Good Faith Deposit as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

The Debtors, in consultation with the Consultation Parties, shall determine whether a Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "**Qualified Bid**," as determined by the Debtors, and such Bidder shall constitute a "**Qualified Bidder**;" *provided* that if the Debtors receive a Bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors may provide (but shall not be obligated to provide) the Bidder with the opportunity to remedy any deficiencies prior to the Auction; *provided, further,* that, for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtors to the reasonable satisfaction of the Debtors, then the Debtors may, after consultation with the Consultation Parties, disqualify any such Qualified Bidder and Qualified Bid, in the Debtors' sole reasonable discretion, and such Bidder shall not be entitled to attend or participate in the Auction.  The Debtors shall consult with the Consultation Parties regarding whether (i) a Bid is or is not a Qualified Bid or (ii) any Qualified Bid or Qualified Bidder should be disqualified.  Any Bidder that does not submit a Bid before the Bid Deadline will not be permitted to submit a Bid after the Bid Deadline or to participate in the Auction.

Notwithstanding anything herein to the contrary, the Stalking Horse Agreement submitted by the Stalking Horse Bidder shall be deemed a Qualified Bid in all respects, and each of the Stalking Horse Bidder, the AIP Parties, and the DIP Agent, the Prepetition Senior Loan Agent and/or the Prepetition Junior Loan Agent, on behalf of the Stalking Horse Bidder, shall be deemed a Qualified Bidder.  Without limiting the foregoing, the Stalking Horse Bidder and any of the other Persons referred to in the immediately preceding sentence shall not be required to submit an additional Qualified Bid prior to the Auction, shall not be required to satisfy any of the conditions set forth in this section prior to the Auction, other than paragraph 16 and 18, shall not, prior to the Auction, be required to provide any additional information, deposit, or due diligence access to the Debtors, and shall not be disqualified as a Qualified Bidder.  The Debtors shall inform counsel to the Stalking Horse Bidder and all Consultation Parties whether the Debtors will consider any other Bid to be a Qualified Bid prior to the Auction.

## Credit Bidding

The Stalking Horse Bid is comprised largely of a credit bid of the DIP Obligations and/or the Prepetition Senior Loan Obligations (in addition to the assumption of certain liabilities).  The Committee shall have until January 17, 2022 at 4:00 p.m. (prevailing Central Time), or such later date as ordered by the Bankruptcy Court, to commence a Challenge with respect to the amount, validity, perfection, enforceability, priority or extent of the Prepetition Liens or Prepetition Secured Obligations (including any Prepetition Secured Obligations that are deemed "rolled up" into the DIP Roll Up Facility) or any Challenge against any of the Prepetition Secured Parties or their Representatives (each such term as defined in the Interim DIP Order or the Final DIP Order, as applicable), pursuant to the terms of the Interim DIP Order or the Final DIP Order, as applicable by filing a complaint with the Bankruptcy Court prior to such date and time in respect of any such Challenge; provided, that the Committee shall not be required to file a motion seeking standing to bring such an action; and *provided further, that,* the Committee is not

foreclosed from seeking additional time from the Bankruptcy Court to commence such a Challenge. To the extent such a Challenge is filed by the Committee and the Bankruptcy Court has not otherwise granted an extension of the time to file such a Challenge, a hearing with respect to that action will be held on January 20, 2022. To the extent that no such Challenge is brought by the Committee, or the Bankruptcy Court orders otherwise, each of the DIP Agent, Prepetition Senior Loan Agent, and/or Prepetition Junior Loan Agent, each of which has asserted a lien on all Assets being sold in the Auction (1) shall be authorized to bid on behalf of the Stalking Horse Bidder and shall have the right and authority to credit bid for such Assets subject to the terms of the Bidding Procedures and the Bidding Procedures Order, and (2) each of the DIP Agent, Prepetition Senior Loan Agent, and/or Prepetition Junior Loan Agent (each on behalf of the Stalking Horse Bidder), as applicable, shall be permitted to credit bid all or any portion of, as applicable, the DIP Obligations, the Prepetition Senior Loan Obligations and/or the Prepetition Junior Loan Obligations (pursuant to, as applicable, the terms of the DIP Documents, Prepetition Senior Loan Documents and/or Prepetition Junior Loan Documents) to acquire the Assets (each dollar of such obligations that is credit bid shall be treated the same as a dollar of cash). For the avoidance of doubt, the DIP Term Facility (as defined in the Interim DIP Order or the Final DIP Order, as applicable) shall not be subject to any Challenge.

## Auction

If one or more Qualified Bids (other than the Stalking Horse Bid) is received by the Bid Deadline, the Debtors will conduct the Auction to determine the highest and otherwise best Qualified Bid. The determination of the highest and otherwise best Qualified Bid shall take into account any factors the Debtors in their reasonable business judgment, in consultation with the Consultation Parties, deem relevant to the value and certainty of the Qualified Bid to the Debtors' estates and may include, but are not limited to, the following: (i) the amount and nature of the consideration; (ii) the number, type, and nature of any changes to the Stalking Horse Agreement requested by each Bidder, including the Assets to be acquired; (iii) the extent to which such modifications are likely to delay closing of the Sale Transaction contemplated by such Qualified Bid and the cost to the Debtors of such modifications or delay; (iv) the total consideration to be received by the Debtors; (v) any contingencies or conditions to closing the Sale Transaction contemplated by such Qualified Bid; (vi) the likelihood of the Bidder's ability to close the Sale Transaction contemplated by such Qualified Bid and the timing thereof; (vii) the tax consequences of such Qualified Bid; and (viii) any other qualitative or quantitative factor that the Debtors deem reasonably appropriate under the circumstances (collectively, the "**Bid Assessment Criteria**").

If no Qualified Bid (or Bid that may be remedied into a Qualified Bid pursuant to these Bidding Procedures and is actually remedied into a Qualified Bid prior to the Auction) other than the Stalking Horse Bid is received by the Bid Deadline, the Debtors shall cancel the Auction and seek approval of the transactions contemplated in the Stalking Horse Agreement at the Sale Hearing which, in that instance, shall occur on January 26, 2022 at 4:30 p.m. (prevailing Central Time) unless the Committee objects to the acceleration of the occurrence of the Sale Hearing to such date. In that event, the Debtors shall file a notice on the Bankruptcy Court's docket notifying all parties in interest of the change in time of the Sale Hearing.

## A.    Location and Date of Auction

The Auction, if any, shall take place **on January 26, 2022 at 9:00 a.m. (prevailing Central Time)**, via remote video or in person, at the Debtors' election, *provided, that,* the Debtors shall determine the place and manner for the Auction within 10 days prior to the Bid Deadline.

## B.    Attendees and Participants

Except as otherwise determined by the Debtors, only the following parties, and their respective representatives and counsel, shall attend the Auction: (i) the Debtors, (ii) the Stalking Horse Bidder, (iii) the United States Trustee, (iv) any Qualified Bidder, (v) each Consultation Party and (vi) any creditor of the Debtors that at least five (5) Business Days prior to the Auction delivers to Debtors' counsel a written request to attend the Auction (by email to Barrett.Lingle@whitecase.com); *provided* that the Debtors may, in their discretion, establish a reasonable limit on the number of advisors that may appear on behalf of each party covered by clause (vi).  The Debtors shall provide the Consultation Parties and all Qualified Bidders with notice of all participants attending the Auction prior to the Auction.  Only the Stalking Horse Bidder and other Qualified Bidders will be entitled to make any Bids at the Auction.

Bidders and their representatives may not communicate or coordinate with one another for purposes of submitting a Bid or Bids or participating in the Auction without the prior consent of the Debtors, which consent shall not be unreasonably withheld.  All parties are prohibited from (i) engaging in any collusion with respect to the bidding or sale of any of the Assets described herein or (ii) taking any other action to prevent a transparent and competitive auction process.

Each Qualified Bidder participating in the Auction, including the Stalking Horse Bidder, must confirm on the record at the commencement of the Auction that it (i) has not engaged in any of the prohibited actions set forth in the immediately preceding paragraph, (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the Sale Transaction contemplated by such Qualified Bid if selected as the Successful Bidder, (iii) has reviewed, understands and accepts the Bidding Procedures, and (iv) has consented to the core jurisdiction of the Bankruptcy Court with respect to the Sale, including the Bidding Procedures, the Auction, the Stalking Horse Agreement, any Competing Transaction, any Modified APA, or the construction and enforcement of documents relating to any Competing Transaction (as described more fully below).

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Debtors have closed the Auction; *provided* that parties may speak with clients or parties necessary to place or increase their Bid so long as such individuals are advised of this confidentiality restriction.

## C.    Conducting the Auction

The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed and shall be conducted openly.  Other than as expressly set forth herein, the Debtors (in consultation with the Consultation Parties) may conduct the Auction in

the manner they determine will result in the highest and otherwise best offer for the Assets so long as such conduct is not inconsistent in any material respect with the other terms and provisions of these Bidding Procedures.

**D.      Auction Baseline Bid**

Prior to the commencement of the Auction, the Debtors will provide the Stalking Horse Bidder, any other Qualified Bidder participating in the Auction, and the Consultation Parties with (i) copies of the Qualified Bid that the Debtors believe is the highest or otherwise best offer (the "**Auction Baseline Bid**"), (ii) an explanation of how the Debtors value the Auction Baseline Bid, and (iii) a list identifying all of the Qualified Bidders.

**E.      Terms of Overbids**

An "**Overbid**" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

1.  <u>Minimum Overbid Increments</u>: Bidding at the Auction will begin with the Auction Baseline Bid and continue, in one or more rounds of bidding in the presence of all parties at the Auction, so long as during each round at least one Overbid that only includes cash consideration, assumption of liabilities, changes to the Assets acquired, or credit bid of claims or obligations against the Debtors, is submitted by a Qualified Bidder that (a) improves upon such Qualified Bidder's immediately prior Qualified Bid and (b) the Debtors, in consultation with the Consultation Parties, determine that such Overbid is (i) with respect to the first round, a higher or otherwise better offer than the Auction Baseline Bid and (ii) with respect to subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below), in each case taking into account other Qualified Bids for other Assets; *provided*, *however*, that with respect to each round of bidding with respect to all or substantially all of the Stalking Horse Assets, any Overbid must provide cash consideration at least equal to the $750,000 (the "**Minimum Overbid**").  Any credit bid of DIP Obligations, Prepetition Senior Loan Obligations and/or Prepetition Junior Loan Obligations made by, or on behalf of, the Stalking Horse Purchaser shall be treated as the same as cash (such that each dollar of such obligations that is credit bid shall be treated the same as a dollar of cash).

2.  <u>Remaining Terms Are the Same as for Qualified Bids</u>: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above; *provided*, *however*, that the Bid Deadline shall not apply and the Stalking Horse Bidder shall not be required to comply with such conditions.  Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Stalking Horse Agreement, Modified APA, Proposed Sale Order or Modified Sale Order, as the case may be, in connection therewith.  Any Overbid must remain open and binding on the Bidder until (a) the Debtors announce that they have received a higher and better Overbid and, (b) in the case of any Overbid submitted by any Qualified Bidder other than the Stalking Horse Bidder, such Overbid is not selected as the Backup Bid.  At the

Debtors' discretion, to the extent not previously provided and to the extent necessary or appropriate, a Bidder submitting an Overbid at the Auction must provide the Debtors, as part of its Overbid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) reasonably satisfactory to the Debtors, in consultation with the Consultation Parties, demonstrating such Bidder's ability to satisfy the Bidder's Obligations as set forth in the Qualified Bid requirements set forth in Paragraphs C.8(b) and (c).

**F.    Announcement and Consideration of Overbids**

1. <u>Announcement of Overbids</u>: All Overbids shall be made and received on an open basis. The Debtors shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, and the basis for calculating such total consideration. Any Overbid made by the Stalking Horse Bidder shall be deemed to have been made in an amount equal to the Overbid plus the Reimbursable Expenses Amount. After the first round of bidding and between each subsequent round of bidding, as applicable, the Debtors, in consultation with the Consultation Parties, will determine and announce the Overbid that they believe to be the highest or otherwise best offer (the "**Leading Bid**").

2. <u>Consideration of Overbids</u>: Subject to the deadlines set forth herein, the Debtors reserve the right, in their own reasonable business judgment and in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; or give Qualified Bidders the opportunity to provide the Debtors with additional evidence that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Competing Transaction at the prevailing Overbid amount.

**G.    No Round-Skipping**

To remain eligible to participate in the Auction, in each round of bidding, (i) each Qualified Bidder must submit an Overbid with respect to such round of bidding and (ii) to the extent a Qualified Bidder fails to submit an Overbid with respect to such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction.

**H.    Reimbursable Expenses for the Stalking Horse Bidder**

To provide the Stalking Horse Bidder with an incentive to participate in a competitive process and to compensate the Stalking Horse Bidder for (i) performing substantial due diligence and incurring the expenses related thereto and (ii) entering into the Stalking Horse Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed to reimburse the Stalking Horse Bidder and its affiliates (including the AIP Parties) and certain related parties for all reasonable, documented out-of-pocket fees, costs and expenses (including, without limitation, reasonable fees, costs and expenses of legal counsel, financial advisors, consultants and any other advisors (other than

certain non-approved expenses) incurred by the Stalking Horse Bidder or any of such affiliates or related parties prior to the valid termination of the Stalking Horse Agreement (all such fees, costs and expenses, the "**Reimbursable Expenses**"), subject to a cap of $1,500,000 (the "**Reimbursable Expenses Amount**")).

The Debtors will take into account the Reimbursable Expenses Amount in each round of bidding. The Reimbursable Expenses shall be payable as set forth in the Bidding Procedures Order. No Qualified Bidders other than the Stalking Horse Bidder shall be entitled to payment or reimbursement of such Qualified Bidder's fees, costs or expenses, or any break-up or similar fees or payments, including the payment of a termination fee, expense reimbursement, option fee, or other break-up fee in connection with a Bid or the Auction.

## I.    **Closing the Auction**

The Auction shall continue until the Debtors, in consultation with the Consultation Parties, determine and identify, in their reasonable business judgment, the highest and otherwise best Qualified Bid (such Qualified Bid, the "**Successful Bid**," and the Qualified Bidder submitting such Successful Bid, the "**Successful Bidder**"), taking into account any factors the Debtors reasonably deem relevant to the value and certainty of the Qualified Bid to the Debtors' estates and may include, but are not limited to, the Bid Assessment Criteria, as the winner of the Auction and, at the time of such selection, shall announce the identity of the Successful Bidder and the amount and material terms of the Successful Bid to all attendees at the Auction. Notwithstanding anything to the contrary herein, no Qualified Bid (other than the Stalking Horse Bid or an Overbid by the Stalking Horse Bidder) may be the Successful Bid unless such Qualified Bid provides for payment of cash consideration at the closing of the Sale Transaction contemplated by such Qualified Bid in an amount equal to or greater than the DIP Obligations, the Prepetition Senior Loan Obligations and the Prepetition Junior Loan Obligations that have been credit bid by, or on behalf of, the Stalking Horse Purchaser.

The Auction shall close when the Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid.

Promptly following the Debtors' selection of the Successful Bid and the conclusion of the Auction, the Debtors shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder. The Debtors shall not consider any Bids or Overbids submitted after the Auction has closed, and any and all Bids or Overbids submitted after the conclusion of the Auction shall be deemed untimely and shall under no circumstances constitute a Bid or Overbid.

## J.    **Backup Bidder**

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest and otherwise best Bid to the Successful Bid at the Auction, as determined by the Debtors, in the exercise of their reasonable business judgment and after consulting with the Consultation Parties, will be designated as the backup bidder (the "**Back-Up Bidder**"); *provided*, that the Stalking Horse Bidder shall not be deemed to be a Back-Up Bidder unless it expressly agrees in writing to serve as a Back-Up Bidder pursuant to the terms of the Stalking Horse Agreement. The identity of the Back-Up Bidder and the

amount and material terms of the Back-Up Bid shall be announced by the Debtors at the same time the Debtors announce the identity of the Successful Bidder.

The Back-Up Bidder shall be required to keep its initial Qualified Bid (or if the Back-Up Bidder submitted one or more Overbids at the Auction, the Backup Bidder's final Overbid) (the "**Back-Up Bid**") open and irrevocable until the earlier of (i) the closing of the Sale Transaction contemplated by the Successful Bid and (ii) 5:00 p.m. (prevailing Central Time) on the date that is sixty (60) days after the date of entry of the Sale Order, which date will be extended for an additional thirty (30) days if the only condition to closing the Successful Bid on the sixtieth (60th) day after entry of the Sale Order is satisfaction of regulatory approvals required under the applicable Modified APA or Stalking Horse Agreement, as applicable (the "**Outside Back-Up Date**").

If the Successful Bid is terminated for any reason prior to consummation of the Sale Transaction contemplated thereby (a "**Successful Bid Failure**"), the Debtors will be authorized, without further order of the Bankruptcy Court, to consummate the Sale Transaction contemplated by the Back-Up Bid with the Back-Up Bidder, *provided* that the Debtors shall provide prompt notice of such Successful Bid Failure to the Consultation Parties and the Debtors shall post a notice on the docket of the Chapter 11 Cases regarding the Successful Bid Failure and the consummation of such Sale Transaction with the Back-Up Bidder.  In the case of a Successful Bid Failure, the Successful Bidder's deposit shall be forfeited to the Debtors or returned to the Bidder in accordance with the terms of the terminated Modified APA.  The Debtors, on their behalf and on behalf of each of their respective estates, specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Back-Up Bidder's following a Successful Bid Failure) in accordance with the terms of the Bidding Procedures, the Bidding Procedures Order, the Stalking Horse Agreement, or the Modified APA, as applicable.

## K.    Sale Hearing and Approval of the Sale

A hearing to consider the approval of the Sale Transaction (the "**Sale Hearing**"), is currently scheduled to take place on January 27, 2022 at 11:00 a.m. (prevailing Central Time), before Honorable David R. Jones, at the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Courtroom 400 Houston, Texas 77002, or conducted consistent with the procedures established pursuant to the Bankruptcy Court; *provided, that*, if no Qualified Bid, other than the Stalking Horse Bid, is received by the Auction Date, the Sale Hearing shall occur on January 26, 2022 at 4:30 p.m. (prevailing Central Time) unless the Committee objects to the acceleration of the occurrence of the Sale Hearing to such date.

At the Sale Hearing, certain findings will be sought from the Bankruptcy Court, including, among other things, that: (1) the Auction was conducted (if held), and the Successful Bidder was selected, in accordance with the Bidding Procedures; (2) the Auction (if held) was fair in substance and procedure; (3) the Successful Bid and Back-Up Bid were Qualified Bids as defined in the Bidding Procedures; and (4) consummation of any Sale as contemplated by the Successful Bid in the Auction will provide the highest and otherwise best offer for the Assets and is in the best interests of the Debtors and their estates.  **The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing (subject in all cases to approval of the Bankruptcy Court).  No further notice**

of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder).

Objections to the Sale Transaction and entry of any order approving the sale (the "**Sale Order**") must (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and all orders of the Bankruptcy Court; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Bankruptcy Court and served **so as to be actually received by the Debtors and counsel to the Debtors by January 19, 2022 at 4:00 p.m. (prevailing Central Time)** (the "**Sale Objection Deadline**"), except that any party may file or supplement an objection after the Sale Objection Deadline solely with respect to the events at the Auction and shall submit such objection before the Sale Hearing is scheduled to commence.

L.    **Additional Procedures**

The Debtors, after consulting with the Consultation Parties, may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures and do not impose additional requirements on the Stalking Horse Bidder; *provided*, that any Qualified Bidder, including the Stalking Horse Bidder, shall have the right to request a telephonic hearing before the Bankruptcy Court in the event the Qualified Bidder disputes that the proposed additional rule is reasonable or not inconsistent in any material respect with the Bidding Procedures or does not impose additional requirements on the Stalking Horse Bidder.

**Consent to Jurisdiction and Authority as Condition to Bidding**

The Stalking Horse Bidder (solely in its capacity as a Bidder) and all other Qualified Bidders shall be deemed to have (1) consented to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, the Stalking Horse Agreement, any Competing Transaction, any Modified APA, or the construction and enforcement of documents relating to any Competing Transaction, (2) **waived any right to a jury trial in connection with any disputes relating to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, the Stalking Horse Agreement, any Competing Transaction, any Modified APA, or the construction and enforcement of documents relating to any Competing Transaction**, and (3) consented to entry of a final order or judgment in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, the Stalking Horse Agreement, any Modified APA, any Competing Transaction, or the construction and enforcement of documents relating to any Competing Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

**Sale Is As Is/Where Is**

Except as set forth in the Stalking Horse Agreement or the Modified APA of the Successful Bidder, the Assets or any other assets of the  Debtors sold pursuant to the Bidding Procedures shall be conveyed at the closing of such sale in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS**

OR IMPLIED."

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Back-Up Bidder shall be returned to such Qualified Bidder not later than five (5) Business Days after the Sale Hearing. The Good Faith Deposit of the Back-Up Bidder, if any, shall be returned to the Back-Up Bidder (or retained by the estates) upon the termination of such Back-Up Bidder's Bid in accordance with its terms. If the Successful Bidder timely closes the Sale Transaction contemplated in the Successful Bid, its Good Faith Deposit shall be credited towards the purchase price and become property of the estate. If the Successful Bidder (or, if the Sale is to be consummated with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such Bidder as provided in the Stalking Horse Agreement or the Modified APA of the Successful Bidder, then the Debtors and their estates shall be entitled to retain the Good Faith Deposit of the Successful Bidder (or, if the Sale is to be consummated with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform. For the avoidance of doubt, the Debtors' retention of a Good Faith Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to the Successful Bidder's or the Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved.

## Reservation of Rights of the Debtors and Modifications

The Debtors reserve the right as the Debtors may reasonably determine in their discretion, after consultation with the Consultation Parties, to be in the best interest of the Debtors' estates to: (i) determine which Bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and otherwise best bid and which is the next highest and otherwise best bid; (iv) reject, at any time prior to the closing of the Auction, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) impose additional terms and conditions with respect to any Bidder (other than the Stalking Horse Bidder); (vi) include any other party as a Consultation Party or attendee at the Auction; and (vii) make non-material modifications to the Bidding Procedures and implement additional procedural rules with respect to the conduct of the Auction (together with the Bidding Procedures, the "**Auction Rules**"), so long as such rules are not inconsistent with any Bankruptcy Court order or any rights of the Stalking Horse Bidder under these Bidding Procedures, *provided*, that nothing herein shall limit any party in interest's right to file an objection with the Bankruptcy Court with respect to any Auction Rules (other than the Bidding Procedures).

Notwithstanding anything to the contrary in these Bidding Procedures, and subject to the terms of the Restructuring Support Agreement, nothing in these Bidding Procedures or the Bidding Procedures Order shall require the Debtors to take any action or to refrain from taking any action related to any Sale Transaction to the extent taking or failing to take such action

would be inconsistent with applicable law or the Debtors' fiduciary obligations, if any, under applicable law; *provided, however*, that the Debtors shall promptly provide the Consultation Parties and any Qualified Bidders with notice of such action or inaction and, to the extent any such action or inaction would constitute a material change from the Bidding Procedures, the Debtors shall first seek approval from the Bankruptcy Court for such action or inaction; *provided further* that neither the Stalking Horse Bidder nor the AIP Parties may object to any request by the Debtors for an expedited hearing regarding such approval which hearing may be conducted telephonically.

## Miscellaneous

Each Preliminary Interested Investor and Bidder is hereby informed that Mears Group, Inc. ("**Mears**") asserts that certain of the Cash, Cash Equivalents, and accounts receivable that are being offered for sale may have been paid by, may be paid by or on behalf of, or is owing from Kinder Morgan to Strike, LLC (the "**KM Disputed Assets**"). Mears Group, Inc. asserts that all or some of such KM Disputed Assets, if any, are held in trust by Strike under the Texas Construction Fund Act, and are not property of the Debtors or property in which Debtors have an interest. *See* TEX. PROP. CODE § 162.001, et seq. Mears asserts that it is the beneficiary of such alleged trust funds, if any, with its rights and entitlements to such alleged trust funds subject to determination in an arbitration proceeding currently pending before the American Arbitration Association (the "**AAA**"). Mears has brought a motion for relief from the automatic stay in the Chapter 11 Cases [Dkt No. 239] to continue the arbitration pending before the AAA and intends to object to the sale of the KM Disputed Assets on the grounds that such assets, if any, are not property of the Debtors' estate or property in which the Debtors have an interest. Mears reserves all rights with respect to any sale, transfer or impairment of KM Disputed Assets.

## **Schedule 2**

Form of Sale Notice

AMERICAS 110786499

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STRIKE, LLC, *et al.*[1] | ) | Case No. 21-90054 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF AUCTION, SALE, AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On December 23, 2021, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**") entered the *Order (A) Establishing Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors' Entry into Stalking Horse Purchase Agreement and Approving the Expense Reimbursement, (C) Establishing Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Approving Form and Manner of Related Notices, (E) Scheduling a Hearing to Consider the Proposed Sale, and (F) Granting Related Relief* [Dkt. No. [●]] (the "**Bidding Procedures Order**"),[2] which granted the Debtors' motion [Dkt. No. 60] (the "**Motion**") and among other things, (a) approved the bidding and auction procedures attached to the Bidding Procedures Order as **Exhibit A** (the "**Bidding Procedures**"); (b) authorized the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") to conduct an auction (the "**Auction**") for the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**") in accordance with the Bidding Procedures; (c) authorized entry into the Stalking Horse Agreement (as defined herein) and approved the payment of the Expense Reimbursement in connection therewith; (d) approved procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale; and (e) scheduled a hearing to approve the Sale (the "**Sale Hearing**"). **All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Strike, LLC (2120); Strike HoldCo, LLC (0607); Delta Directional Drilling, LLC (9896); Strike Global Holdings, LLC (4661); Capstone Infrastructure Services, LLC (0161); and Crossfire, LLC (7582).  The location of Debtor Strike, LLC's principal place of business and the Debtors' service address is: 1800 Hughes Landing Boulevard., Suite 500, The Woodlands, Texas 77380.  Additional information regarding this case may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/StrikeLLC.

[2]     Unless otherwise indicated, capitalized terms used but not defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or Bidding Procedures, as applicable.

## Assets to Be Sold

To facilitate the Sale of the Assets, the Debtors selected the bid (the "**Stalking Horse Bid**") of Strike Acquisition LLC (the "**Stalking Horse Bidder**") as the initial stalking horse bid for the Assets.  The Stalking Horse Bidder and the Debtors have executed that certain Asset Purchase Agreement (as amended, supplemented or otherwise modified by the parties thereto, and including the disclosure schedules and exhibits attached thereto, the "**Stalking Horse Agreement**"), dated December 6, 2021, under which the Stalking Horse Bidder has agreed to effectuate the Sale, which includes the purchase of the Purchased Assets (as defined in the Stalking Horse Agreement)[3] and the assumption of certain liabilities associated with the Debtors' as set forth in the Stalking Horse Agreement, subject to the terms and conditions set forth therein.  A copy of the Stalking Horse Agreement is filed on the docket of the Chapter 11 Cases at Docket No. [●].  The Stalking Horse Bid is subject to higher and better offers submitted in accordance with the terms of the Bidding Procedures.  Having announced the Stalking Horse Bid, the Debtors will now conduct a round of open bidding intended to obtain the highest and otherwise best bid for the Assets.

The Debtors are offering for sale all of the Assets.  Except as otherwise provided in the Stalking Horse Agreement or a Modified APA submitted by a Successful Bidder, the Debtors' are seeking to sell their right, title and interest in and to the Assets free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, as more fully defined in the Sale Order, the "**Interests**"), subject only to the Assumed Liabilities and Permitted Encumbrances (each as defined in the Stalking Horse Agreement or in the Modified APA of the Successful Bidder, as applicable), to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity, force, effect, and priority as such Interests applied against the Assets as of the Petition Date, subject to any rights, claims, and defenses of the Debtors.

## Key Dates and Deadlines

**Bid Deadline.** To be eligible to participate in the Auction, a person or entity must submit a Qualified Bid, in writing and in accordance with the Bidding Procedures, so as to be **actually received** by (a) counsel to the Debtors, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131 Attn: Thomas E Lauria (tlauria@whitecase.com) and Matthew Brown (mbrown@whitecase.com); White & Case LLP, 111 South Wacker Drive, Suite 5100 Chicago, IL 60606, Attn: Andrew F. O'Neill (aoneill@whitecase.com);  and White & Case LLP, 555 S. Flower St., Suite 2700, Los Angeles, CA 90071, Attn: Aaron Colodny (aaron.colodny@whitecase.com), (b) the Debtors' investment banker and financial advisor, Opportune Partners, LLC, 711 Louisiana Street, Suite 3100, Houston, TX 77002, Attn: Ryan Bouley (rbouley@opportune.com) and Jason Lawrence (jlawrence@opportune.com), (c) counsel to the Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY

---

[3]     As used herein, the "Purchased Assets" consist of the Assets the Debtors have agreed to sell, and the Stalking Horse Bidder has agreed to purchase, on the terms set forth in the Stalking Horse Agreement.  The Purchased Assets constitute substantially all of the Assets other than the "Excluded Assets" as set forth in the Stalking Horse Agreement.

10036, Attn: Philip Dublin (pdublin@akingump.com), Meredith Lahaie (mlahaie@akingump.com) and Gary Ritacco (gritacco@akingump.com) and (d) the Committee's financial advisor, FTI Consulting, Inc., 1301 McKinney Street, Suite 3500, Houston, TX 77010, Attn: Samuel Starr (samuel.star@fticonsulting.com) and Michael Bui (Michael.bui@fticonsulting.com) **on or before January 24, 2022 at 11:59 p.m. (prevailing Central Time)** (the "**Bid Deadline**").

**Auction.** If one or more Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline, the Debtors will conduct the Auction to determine the highest or otherwise best Qualified Bid **on or before January 26, 2022 at 9:00 a.m. (prevailing Central Time)** via remote video or in-person, at the Debtors' election. Except as otherwise determined by the Debtors, only the following parties, and their respective representatives and counsel, shall attend the Auction: (i) the Debtors, (ii) the Stalking Horse Bidder, (iii) the United States Trustee, (iv) any Qualified Bidder, (v) each Consultation Party, and (vi) any creditor of the Debtors that at least five (5) Business Days prior to the Auction delivers to Debtors' counsel a written request to attend the Auction (by email to Barrett.Lingle@whitecase.com); *provided* that the Debtors may, in their reasonable discretion, establish a limit on the number of advisors that may appear on behalf of each party covered by clause (vi). The Debtors shall provide the Consultation Parties and all Qualified Bidders with notice of all participants attending the Auction prior to the Auction. Only the Stalking Horse Bidder and other Qualified Bidders will be entitled to make any Bids at the Auction.

**Sale Objection Deadline.** Objections, if any, to the Sale (a "**Sale Objection**") (other than objections with respect to the cure amount or otherwise to the assumption and assignment of the Assigned Contracts (an "**Assignment Objection**")), including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code to a Successful Bidder and/or a Backup Bidder, as applicable, and the entry of any order approving the Sale, must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and all orders of this Court, (c) state with particularity the legal and factual basis for the objection and the specific ground therefor, and (d) be filed with the Court **on or before January 19, 2022 at 4:00 p.m. (prevailing Central Time)** (the "**Sale Objection Deadline**"), except that any party may file or supplement an objection after the Sale Objection Deadline based solely with respect to the events at or following the Auction and shall submit such objection before the Sale Hearing is scheduled to commence.

**Sale Hearing.** The Sale Hearing is currently scheduled to take place on **January 27, 2022 at 11:00 a.m. (prevailing Central Time)**, before Judge David R. Jones at the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Courtroom 400, Houston, Texas 77002. **The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder).** If no Qualified Bid (other than the Stalking Horse Bid) is received by the Auction Date, the Sale Hearing shall occur on January 26, 2022 at 4:30 p.m. (prevailing Central Time) unless the Committee objects to the acceleration of the occurrence of the Sale Hearing to such date.

3

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PERSON OR ENTITY WHO FAILS TO FILE AND SERVE AN OBJECTION TO THE PROPOSED SALE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER AND THIS NOTICE BY THE SALE OBJECTION DEADLINE OR OTHERWISE ABIDE BY THE PROCEDURES SET FORTH IN THE BIDDING PROCEDURES REGARDING AN OBJECTION TO THE SALE TRANSACTION SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE PROPOSED SALE AND TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL INTERESTS, INCLUDING ANY CLAIM THAT ANY OF THE ASSETS ARE OR SHOULD BE HELD IN TRUST FOR SUCH PERSON OR ENTITY.**

## Submitting a Bid and Obtaining Additional Information

Any party interested in submitting a Bid for the Assets should review the Bidding Procedures and Bidding Procedures Order carefully and contact the Debtors or their advisors. **Failure to abide by the Bidding Procedures and the Bidding Procedures Order may result in the rejection of your Bid.**

Copies of the Motion, Bidding Procedures Order, the Bidding Procedures, and the Stalking Horse Agreement may be obtained from the Debtors' claims agent, Epic Systems Inc., by (i) calling (855) 675-2860 (Toll Free) or (503) 520-4488 (International), or (ii) visiting the Debtors' restructuring website at https://dm.epiq11.com/StrikeLLC.

Houston, Texas
December [●], 2021

/s/
_____

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy Peguero (TX Bar No. 24102776)
Genevieve Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
Email: kpeguero@jw.com
Email: ggraham@jw.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**WHITE & CASE LLP**
Thomas E Lauria (TX Bar No. 11998025)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
Gregory L. Warren (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 900
Miami, FL 33131
Telephone: (305) 371-2700
Email: tlauria@whitecase.com
Email: mbrown@whitecase.com
Email: fhe@whitecase.com
Email: gregory.warren@whitecase.com

Andrew F. O'Neill (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
Email: aoneill@whitecase.com

Charles Koster (admitted *pro hac vice*)
609 Main Street, Suite 2900
Houston, TX 77002
Telephone: (713) 496-9700
Email: charles.koster@whitecase.com

Aaron Colodny (admitted *pro hac vice*)
R.J. Szuba (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
Email: aaron.colodny@whitecase.com
Email: rj.szuba@whitecase.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

## <u>Schedule 3</u>

**Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| STRIKE, LLC, *et al.*[1] | ) | Case No. 21-90054 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED
## LEASES IN CONNECTION WITH SALE AND CURE COSTS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On December 23, 2021, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**") entered the *Order (A) Establishing Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors' Entry into Stalking Horse Purchase Agreement and Approving the Expense Reimbursement, (C) Establishing Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Approving Form and Manner of Related Notices, (E) Scheduling a Hearing to Consider the Proposed Sale, and (F) Granting Related Relief* [Dkt. No. [●]] (the "**Bidding Procedures Order**"),[2] which, among other things, (a) approved the bidding and auction procedures attached to the Bidding Procedures Order as **Schedule 1** (the "**Bidding Procedures**"); (b) authorized the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") to conduct an auction (the "**Auction**") for the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**") in accordance with the Bidding Procedures; (c) authorized entry into the Stalking Horse Agreement (as defined herein) and approved the payment of the Expense Reimbursement in connection therewith; (d) approved procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale (the "**Assumption and Assignment Procedures**"); and (e) scheduled a hearing to approve the Sale (the "**Sale Hearing**").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Strike, LLC (2120); Strike HoldCo, LLC (0607); Delta Directional Drilling, LLC (9896); Strike Global Holdings, LLC (4661); Capstone Infrastructure Services, LLC (0161); and Crossfire, LLC (7582).  The location of Debtor Strike, LLC's principal place of business and the Debtors' service address is: 1800 Hughes Landing Boulevard., Suite 500, The Woodlands, Texas 77380.  Additional information regarding this case may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/StrikeLLC.

[2]     Unless otherwise indicated, capitalized terms used but not defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

To facilitate the Sale of the Assets, the Debtors selected the bid (the "**Stalking Horse Bid**") of Strike Acquisition LLC (the "**Stalking Horse Bidder**") as the initial stalking horse bid for the Assets.  The Stalking Horse Bidder and the Debtors have executed that certain Asset Purchase Agreement (as amended, supplemented or otherwise modified by the parties thereto, and including the disclosure schedules and exhibits attached thereto, the "**Stalking Horse Agreement**"), dated December 6, 2021, under which the Stalking Horse Bidder has agreed to effectuate the Sale, which includes the purchase of the Purchased Assets[3] and the assumption of certain liabilities associated with the Debtors' operations as set forth in the Stalking Horse Agreement.  A copy of the Stalking Horse Agreement is attached as **Exhibit C** to the Motion [Dkt No. 60].  Having announced the Stalking Horse Bid, the Debtors will now conduct a round of open bidding intended to obtain the highest and otherwise best bid for the Assets in accordance with the Bidding Procedures.

As part of the Sale, and pursuant to the Assumption and Assignment Procedures, the Debtors intend to assume and assign certain executory contracts and unexpired leases (collectively, the "**Assigned Contracts**") to the Stalking Horse Bidder or any other Successful Bidder pursuant to section 365 of the Bankruptcy Code.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A CONTRACT OR LEASE THAT MAY BE ASSUMED AND ASSIGNED AS PART OF THE SALE.**

### Assigned Contracts and Cure Amounts

Set forth on **Exhibit A** hereto are (a) the Assigned Contracts that the Debtors currently intend to assume and assign to the Stalking Horse Bidder or the Successful Bidder in connection with the Sale (collectively, the "**Assigned Contracts**"), and (b) the amounts (the "**Cure Amounts**") that the Debtors believe are owed to each counterparty to each Assigned Contract to cure any defaults existing under the Assigned Contracts as of December 6, 2021 (the "**Petition Date**") under section 365(b)(1) of the Bankruptcy Code.  Other than the Cure Amounts listed, the Debtors are not aware of any amounts due and owing under the Assigned Contracts as of the Petition Date.  If no Cure Amount is listed for a particular Assigned Contract, then the Debtors believe that there is no Cure Amount outstanding.  Any undisputed amounts that become due and owing after the Petition Date will be satisfied in the ordinary course by the Debtors or the Successful Bidder.  **The inclusion of an Assigned Contract on Exhibit A shall not constitute an admission that such Assigned Contract is an executory contract or lease.**

The Stalking Horse Bidder has demonstrated its ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code.  Information regarding the Stalking Horse Bidder's (or its designated affiliate's) ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the

---

[3]     As used herein, the "Purchased Assets" consist of the Assets the Debtors have agreed to sell, and the Stalking Horse Bidder has agreed to purchase, on the terms set forth in the Stalking Horse Agreement.  The Purchased Assets constitute substantially all of the Assets other than the "Excluded Assets" as set forth in the Stalking Horse Agreement.

Bankruptcy Code, including, without limitation, the assignee's financial wherewithal and willingness to perform under the Assigned Contracts (the "**Adequate Assurance Information**"), is available upon request by contacting counsel to the Debtors.

## Objection Deadlines and Sale Hearing

**Assignment and Cure Objection Deadline.** Objections to the proposed assumption and assignment of an Assigned Contract to the Stalking Horse Bidder (an "**Assignment Objection**"), including the adequate assurance of future performance by the Stalking Horse Bidder or to the proposed Cure Amounts (specifically, a "**Cure Objection**") must, in each case, (i) be in writing, (ii) state with specificity the nature of the objection and, if the objection includes a Cure Objection, what Cure Amount the party to the Assigned Contract believes is required if different than the amount listed on **Exhibit A**, in all cases with appropriate documentation in support thereof, (iii) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and any orders of the Court, and (iv) be filed with the Court **on or before January 12, 2022, at 4:00 p.m. (prevailing Central Time) (**the **"Assignment Objection Deadline"**).

If a timely Cure Objection cannot be resolved by the parties, it may be heard at the Sale Hearing or, at the option of the Debtors, in consultation with the Successful Bidder, be adjourned to a subsequent hearing (an "**Adjourned Cure Objection**"). An Adjourned Cure Objection may be resolved after the closing date of the Sale Transaction; provided, that, with respect to any disputed cure amounts asserted in a timely filed Cure Objection, the Debtors shall, within ten (10) Business Days after the entry of the Sale Order, establish or cause to be established a cash reserve in an amount sufficient to pay the disputed cure amounts in full.

**Alternative Adequate Assurance Objection Deadline.** If a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, Adequate Assurance Information regarding the Successful Bidder may be available upon request by contacting counsel to the Successful Bidder. The deadline to file an objection to assumption and assignment based only on adequate assurance of future performance with respect to such Successful Bidder (an "**Adequate Assurance Objection**") shall be extended to 10:00 a.m. (prevailing Central time) on the date of the Sale Hearing. Such Adequate Assurance Objection must be in writing and specify the nature of such objection. **Notwithstanding the foregoing, all other Assignment Objections, including Cure Objections, must be filed by the applicable Assignment Objection Deadline regardless of whether the Stalking Horse Bidder is the Successful Bidder.**

Any Assignment Objection filed with the Court that includes confidential, non-public Adequate Assurance Information must and is authorized to be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee or assignees. Unredacted versions of such objections shall be served upon the Debtors, the U.S. Trustee and the applicable assignee or assignees, with a copy to the Court's chambers.

**Sale Hearing.** All Assignment Objections (other than Adjourned Cure Objections) and Adequate Assurance Objections will be heard at the Sale Hearing, which is currently scheduled to take place on **January 27, 2022 at 11:00 a.m. (prevailing Central Time)** before Judge David R. Jones at the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk

Street, Courtroom 400, Houston, Texas 77002.  **The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**  If no Qualified Bids (other than the Stalking Horse Bid) are received by the Auction Date, the Sale Hearing shall occur on January 26, 2022 at 4:30 p.m. (prevailing Central Time) unless the Committee objects to the acceleration of the occurrence of the Sale Hearing to such date.

<u>**Obtaining Additional Information**</u>

Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures, and the Stalking Horse Agreement may be obtained from the Debtors' claims agent, Epic Systems Inc., by (i) calling (855) 675-2860 (Toll Free) or (503) 520-4488 (International), or (ii) visiting the Debtors' restructuring website at https://dm.epiq11.com/StrikeLLC.

You may obtain Adequate Assurance Information relating to the Stalking Horse Bidder on a confidential basis by submitting a written request to counsel for the Debtors.  If a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, you may submit a renewed request relating to such Successful Bidder.

<u>**Consequences of Failing to Object**</u>

**ANY COUNTERPARTY TO AN ASSIGNED CONTRACT THAT DOES NOT TIMELY FILE AND SERVE AN ASSIGNMENT OBJECTION, INCLUDING A CURE OBJECTION, BY THE APPLICABLE OBJECTION DEADLINES STATED IN THIS NOTICE SHALL BE (I)  DEEMED TO HAVE CONSENTED TO, AND SHALL BE FOREVER BARRED FROM OBJECTING TO, (A) THE CURE AMOUNT AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACT, AND (II) FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING ANY CURE AMOUNT, OTHER THAN THE CURE AMOUNT LISTED ON <u>EXHIBIT A</u> TO THIS NOTICE AGAINST THE DEBTORS, ANY SUCCESSFUL BIDDER, OR ANY OTHER ASSIGNEE OF THE RELEVANT CONTRACT.**

Houston, Texas
December [●], 2021

/s/
_____

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy Peguero (TX Bar No. 24102776)
Genevieve Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
Email: kpeguero@jw.com
Email: ggraham@jw.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**WHITE & CASE LLP**
Thomas E Lauria (TX Bar No. 11998025)
Matthew C. Brown (admitted *pro hac vice*)
Fan B. He (admitted *pro hac vice*)
Gregory L. Warren (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 900
Miami, FL 33131
Telephone: (305) 371-2700
Email: tlauria@whitecase.com
Email: mbrown@whitecase.com
Email: fhe@whitecase.com
Email: gregory.warren@whitecase.com

Andrew F. O'Neill (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
Email: aoneill@whitecase.com

Charles Koster (admitted *pro hac vice*)
609 Main Street, Suite 2900
Houston, TX 77002
Telephone: (713) 496-9700
Email: charles.koster@whitecase.com

Aaron Colodny (admitted *pro hac vice*)
R.J. Szuba (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
Email: aaron.colodny@whitecase.com
Email: rj.szuba@whitecase.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

5